577 A.2d 205

**Karen R. MILLER, Appellee,**

v.

**Kurtz J. MILLER, Appellant.**

Superior Court of Pennsylvania.

Argued March 8, 1990.

Filed June 28, 1990.

256

Arthur T. McDermott, Carlisle, for appellant.

Ellen M. Averett, Gettysburg, for appellee.

Before WIEAND, TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

This appeal stems from the May 15, 1989, order of the Court of Common Pleas of Adams County granting a decree in divorce and directing an award of equitable distribution. Appellant raises the following issues:

1) Did the court properly evaluate the factors set forth in 23 Pa.S.A. § 401(d) in awarding appellee the bulk of the marital estate?

2) May the court treat that portion of appellant's pension waived in order to receive veterans' disability benefits as marital property?

3) Should a vested, matured, and currently being received pension be distributed on an "actuarialy based current value?"

4) Was appellant's military pension properly evaluated since service beyond thirty (30) years does not increase the percentage of the pension?

5) If the court's decision to award the "present value" of appellant's military pension was appropriate, should the present value be determined on the date of valuation or on the date of distribution?

6) Should appellant be given a reasonable opportunity to present his case?

For the following reasons, we vacate that part of the order as it pertains to equitable distribution, and remand for further proceedings consistent with this opinion. The provision granting the parties' divorce is affirmed.

The parties married on November 10, 1967. Upon appellant's retirement as a Colonel in October of 1973, the parties and their two (2) sons moved to New Oxford, Adams County. In 1979, they purchased and moved to a large farm near the Eisenhower farm in Gettysburg. The family remained there until July of 1984, when appellee and her sons left.

On November 2, 1984, appellee filed a complaint in divorce, seeking a property distribution, alimony, alimony pendente lite, counsel fees and expenses. Appellant filed an answer on May 19, 1987, and a motion to bifurcate of November 10, 1987. On December 21, 1987, appellee answered the motion, and the trial court ruled that the lack of information caused the matter to be continued at the call of either party.

Appellant filed an amendment to the answer and an affidavit under section 201(d) of the Pennsylvania Divorce Code on December 23, 1987. On March 14, 1988, appellant requested another hearing on his motion to bifurcate. The court granted his request and scheduled a hearing for April 25, 1988. Three (3) days later, the court ruled that questions existed and continued the matter at the call of either party.

A master's hearing was to be held on September 23, 1988. One (1) week prior, appellant informed the master that his health and lack of counsel precluded his attendance. The master informed appellant that she would grant a continuance upon the receipt of a doctor's excuse. No excuse was presented and appellant did not attend. The hearing was conducted as scheduled and on December 2, 1988, the master filed her report, recommending that appellee receive 60 percent of the marital estate.

Both filed exceptions to the report and the court ordered a February 22, 1989, hearing on the exceptions. The lower court issued its ruling on March 10, 1989, and ordered the parties to submit proposed distribution schemes. On April 10, 1989, the lower court awarded appellee 55 percent of the marital property. This order was incorporated into the May 15, 1989, final divorce decree, from which appellant takes this timely appeal.

Initially, when reviewing a trial court's determination of equitable distribution, an appellate court's scope of review is whether an abuse of discretion occurred. In *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987), *allocatur denied*, 517 Pa. 623, 538 A.2d 877 (1988), we stated:

> Under this standard, we do not usurp the hearing court's duty as fact finder. Rather we apply the legislative guidelines of the Divorce Code to the record to determine whether or not the hearing court has abused its discretion. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.... However, an abuse of discretion will be found by this Court if the trial court failed to follow proper legal procedure or misapplied the law. (Citations omitted).

*Id.*, 365 Pa.Super. at 412, 529 A.2d at 1124.

■ We will first address the issue upon which we vacate and remand. Appellant argues that the portion of his pension waived to receive veteran's disability benefits cannot be treated as marital property. We agree and vacate and remand for the court to re-determine the equitable distribution of appellant's pension.

The recent United States Supreme Court decision in *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), has been followed by this Court in *Martin v. Martin*, 385 Pa.Super. 554, 561 A.2d 1231 (1989). In *Mansell*, the Court held:

> ....that the Former Spouses Protection Act does not grant state courts the power to treat, as property divisi-

ble upon divorce, military retirement pay that has been waived to receive veterans disability benefits.

*Mansell, supra,* 109 S.Ct. at 2031.

Following the directive in *Mansell,* this Court stated that:

....to the extent Pennsylvania's Divorce Code allows equitable distribution of VA disability retirement pay, or pay waived to receive disability pay, the Code is pre-empted by federal law and cannot be given effect.

*Martin, supra,* 385 Pa.Super. at 562, 561 A.2d at 1235.

Instantly, VA disability benefits were included in the determination of the military pension distributed to the parties. Box one (1) of plaintiff's (appellee's) exhibit (15), dated March of 1988, reflects the appellant's retirement entitlement. This amount, $4096.00, was used by appellee's expert witness and The Office of The Assistant Secretary of Defense to determine appellant's pension value. See plaintiff's exhibits (3) and (4). Box two (2) of plaintiff's exhibit (15) reflects a deduction in the entitlement of $289.00. The description contained in box two (2) is "VA" and corresponds with plaintiff's exhibit (16), detailing appellant's disability compensation award.

Under the mandate of the United States Supreme Court, the disability compensation award should have been excluded from the value of appellant's pension. The sum contained in box eight (8) of plaintiff's exhibit (15), total entitlement, should have been utilized. This figure of $3,807.00 is the difference between box one (1) and box two (2). Therefore, we vacate and remand to the lower court for re-determination of appellant's pension available for equitable distribution in compliance with *Martin.* However, the court must also determine the amount of disability compensation appellant is receiving, since plaintiff's exhibit (16) indicates that the disability compensation has increased.

Appellant also argues that the court erred in evaluating the factors set forth in 23 Pa.S.A. § 401(d) in awarding appellee the majority of the marital estate. We find no error. The factors were discussed in the master's report

filed on December 2, 1988, and by the lower court in its March 10, 1989, ruling on the exceptions to the master's report. However, since this case is remanded, the lower court must examine 23 Pa.S.A. § 401(d) in light of the new distribution.

■ Next, appellant argues that he was not given a chance to present his case. We disagree. Appellant believes he should have received a continuance of the September 23, 1988, master's hearing. The master informed appellant (1) week prior to the hearing that a continuance would be granted if he obtained a medical excuse outlining his ill health. Appellant failed to secure an excuse nor did he attend the hearing. Therefore, any perceived unfairness was the result of appellant's failure.

■ Additionally, appellant was allowed to present his case at the February 22, 1989, hearing on exceptions to the master's report. Appellant claims that he did not receive enough notice to secure his witnesses, a real estate appraiser, a pension evaluator and a medical expert. This case has been ongoing for five (5) years, and, in light of the master's report filed in December of 1988, appellant was aware of the issues. Also, he failed to ask for a continuance to secure these witnesses. We do not accept that appellant was that unprepared. The court has been tolerant and has afforded him chances to present his case. Accordingly, this issue is meritless.

■ Further, appellant argues that the lower court erred by distributing his vested, matured and currently being received pension on an actuarialy based current value. In other words, it was error to award appellee a lump sum share of his pension. We disagree. In *Braderman v. Braderman*, 339 Pa.Super. 185, 488 A.2d 613 (1985), this Court discussed the two methods used to distribute retirement benefits classified as marital property. As we noted:

One method, the immediate offset method, divides the benefits at the time the equitable distribution order is entered by assigning a present value to them.... As we

stated above, only those benefits attributable to the period commencing with the marriage and ending on the date of separation are marital property.... The present value must be multiplied by the "coverture" fraction to reach the present value of the entitlement which was acquired during the marriage.... Next, the court must determine how the sum available for equitable distribution should be apportioned between the spouses according to the Divorce Code. After determining the non-employee spouse's interest in the benefits, the court awards these benefits to the employee spouse and offsets this by distributing other marital property or by ordering payment to the non-employee spouse.

The second method is labeled the deferred distribution or reserved jurisdiction method, since the court retains jurisdiction and apportions the benefits when they enter pay status or mature. Under this method, present value figures are not used. Rather, the "coverture" fraction is applied to the benefits when they enter pay status since there are too many variables projected into the future.

*Id.,* 339 Pa.Superior Ct. at 197–98, 488 A.2d at 619–20. *See, Hunsinger v. Hunsinger,* 381 Pa.Super. 453, 554 A.2d 89 (1989). In comparing the two, the *Braderman* Court stated that:

The immediate offset method has the advantage of avoiding further entanglement between the parties. Problems with continuing court supervision and enforcement are also avoided. This method's greatest virtue, however, is that it effectuates a final and immediate settlement of the distribution of the retirement benefits. In contrast, the deferred distribution method equally divides the risk of forfeiture before maturity among the parties, but also prolongs the strife and hostility between the parties by extending the time for a final resolution of the parties assets. Although an immediate offset is preferred, ... this method is impractical where the parties do not possess enough assets to offset the pension award. When the value of the employee-spouse's pension far exceeds

the value of the other marital property, the deferred distribution method must be used.

*Braderman, supra,* 339 Pa.Super. at 197–98, 488 A.2d at 619–20.

Instantly, the "immediate offset method" was used and was justified. It gave finality to the matter and there was sufficient property other than the pension to render the more cumbersome deferred distribution method unnecessary. Therefore, appellant's argument lacks merit.

■ Appellant also argues that if awarding the pension's present value was correct, it should be valued from the date of distribution. Absent a specific benchmark for valuation, the trial court is free to select the date which best serves to provide for economic justice between the parties. The date chosen by the trial court is reviewed under an abuse of discretion standard. *Aletto v. Aletto,* 371 Pa.Super. 230, 237, 537 A.2d 1383, 1387 (1988) (Citations omitted). The *Braderman* Court recommended valuing the pension as of the date of the hearing when using the immediate offset method. *Braderman, supra,* 339 Pa.Super. at 197, 488 A.2d at 619. On remand, the trial court has discretion when assigning a date of valuation. Yet, valuations should be made as close as possible to the property distribution date. *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988).

■ Finally, appellant believes the lower court improperly evaluated his pension because the percentage of his pension does not increase after thirty (30) years of service. 10 U.S.C.S. § 1401, computation of retired pay, provides formulas, depending on rank or grade and the circumstances surrounding the retirement, to determine retirement compensation. The formulas have two common threads. The first is that the benefit calculation is based upon the monthly basic pay of grade to which member is entitled under section 1372[1] or to which he was entitled on

1.  10 U.S.C.S. § 1372 states:
    Unless entitled to a higher grade under some other provision of law, any member of the armed force who is retired for physical disabili-

the day before retirement or placement on temporary disability retired list, whichever is higher.

The second common thread is that following a series of calculations, the total must be reduced by the excess over 75 percent of the pay upon which the computation was based. Therefore, appellant contends that since his percentage is no greater than 75 after his thirtieth year, appellee should receive a coverture fraction representing the time they were married until his thirtieth year of military service.

The parties married in November of 1967 and appellant's thirtieth year of service was in July of 1972, resulting in 56 months of marriage. Yet, appellant retired in October of 1973, causing 72 months to elapse during the marriage until retirement. The court found the coverture fraction to be 19.15 percent or 72 months of marriage divided by 376 months of military service. Appellant calculates the fraction at 15.55 percent or 56 months of marriage at the time of his thirtieth year of service divided by thirty (30) years or 360 months. The lower court did not err.

Appellant concedes in his brief that his monthly basic continued to increase. (Appellant's brief, p. 15). In turn, the monthly basic pay used in the retirement computation

ty under section 1201 or 1204 of this title or whose name is placed on the temporary disability retirement list under section 1202 or 1205 of this title is entitled to the grade equivalent to the highest of the following:

(1) The grade or rank in which he is serving on the date when his name is placed on the temporary disability retired list or, if his name was not carried on that list, on the date when he is retired.

(2) The highest temporary grade or rank in which he served satisfactorily, as determined by the Secretary of the armed force from which he is retired.

(3) The permanent regular or reserve grade to which he would have been promoted had it not been for the physical disability for which he is retired and which was found to exist as a result of his physical examination for promotion.

(4) The temporary grade to which he would have been promoted had it not been for the physical disability for which he is retired, if eligibility for that promotion was required to be based on cumulative years of service or years of service in grade and disability was discovered as a result of his physical examination for promotion.

pursuant to 10 U.S.C.S. § 1401 increased. Additionally, the Office of The Assistant Secretary of Defense assigned an interest rate to the retirement benefits of 7.5 percent and cost of living adjustment of actuals to April of 1988 and 5 percent thereafter. See Plaintiff's exhibit 16. These adjustments raise the amount of money available to appellant during his retirement.

The record reflects that the parties were married while appellant's monthly basic pay increased to the level utilized in his retirement benefit computation. It is settled that the portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property within the meaning of the Divorce Code. *Hutnik v. Hutnik*, 369 Pa.Super. 263, 535 A.2d 151 (1987). Additionally, appellant's pension is earning interest and cost of living adjustments. Where a plan has vested and value increases aside from the contribution of the parties, beyond the date of separation, the increase is marital property. *Morschhauser v. Morschhauser*, 357 Pa. Super. 339, 516 A.2d 10 (1986). Accordingly, the lower court evaluated appellant's pension correctly and assigned appellee the proper coverture fraction.

For all of the foregoing reasons, we affirm the trial court's findings in part, reverse in part, and remand this case for further proceedings consistent with this opinion.

Jurisdiction relinquished.