588 A.2d 58

**Arthur B. HOLLAND a/k/a Arthur Bewley Holland, Appellant,**

v.

**Lula Mae Williams HOLLAND, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 5, 1990.

Filed Feb. 12, 1991.

Petition for Allowance of Appeal
Denied Aug. 6, 1991.

Michael R. Sweeney, Media, for appellant.

Thomas L. Kelly, Media, for appellee.

Before OLSZEWSKI, DEL SOLE and HUDOCK, JJ.

DEL SOLE, Judge.

In this appeal of an equitable distribution order, Appellant raises four questions. Chief among them is the method used by the trial court in distributing the marital share of Appellant's pension. The trial judge, after entering a decree of divorce, ordered Mr. Holland's government retirement plan be equitably distributed using the deferred distribution method. The court ruled that the basic benefit of

this asset should be determined at the time that husband retires based upon an application of the coverture fraction.

█ In evaluating an equitable distribution scheme, an appellate court will not reverse an order determining equitable distribution absent an abuse of discretion *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987).

█ Wife was awarded forty percent of husband's government pension using a coverture fraction, the length of the marriage being the numerator, and husband's total years of employment the denominator. This was to be applied to his basic retirement benefits without adjustment. Basic benefits are calculated by averaging the three highest income earning years of the husband's last five years of employment. Appellant argues that the portion of benefits attributable to service credits earned after separation is not part of the marital estate. He would have the court value the pension at the time of divorce and fix future distribution at that time.

This court has repeatedly stated that in general "only that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property within the meaning of the divorce code." *Hutnik v. Hutnik*, 369 Pa.Super. 263, 535 A.2d 151 (1987). However, an exception to this rule was stated in *Morschhauser v. Morschhauser*, 357 Pa.Super. 339, 516 A.2d 10 (1986). It was there held that "where a plan has vested and value increases aside from contribution of the parties, beyond the date of separation," *Id.*, 357 Pa.Superior Ct. at 344–45, 516 A.2d at 12–13, the *increase is marital property*. (emphasis added). A delayed distribution of pension benefits requires the non-employed spouse to wait until some indefinite time in the future to receive the marital share. To compensate for this postponement of benefit, that spouse is permitted to enjoy increases in value occasioned by continued employment of the worker. Also, the employed spouse increases the non-marital share of the benefits since continuing service enlarges the denominator.

Further, later year wage increases are a product of experience and longevity which were developed during the marriage. The husband, as a long time employee of the Federal Government, can look forward to the benefits which accrue from a vested pension. His former spouse is entitled to share in any increase in value of the marital share which may occur by Appellant's continued employment.

Appellant's second contention is that the trial court failed to consider wife's social security benefits in its equitable distribution analysis. Section 401(d) of the divorce code requires the court to consider all sources of income, including social security. 23 P.S. § 401(d)(6). As an employee of the Federal Government, husband does not participate in the social security program. Wife is entitled to collect social security benefits when she attains the age of sixty-five based on her employment history. Husband argues that the trial court, in awarding him sixty percent of the his pension did not compensate him for his lack of social security benefits. We believe the trial court did take into account the wife's expectation of social security benefits. The husband's estimated pension benefit for trial purposes was Four Thousand Two Hundred Thirty-three Dollars ($4233.00) per month. Sixty percent of that figure is two Thousand Five Hundred Forty Dollars ($2540.00). The wife would receive One Thousand Six Hundred Ninety–Three Dollars ($1693.00), which when combined with her estimated social security benefit of Eight Hundred Fifty–Eight Dollars ($858.00) would equal Two Thousand Five Hundred Fifty–One Dollars ($2551.00) the same amount the husband would receive in pension benefits. Since this is in keeping with the overall distribution, we conclude that the trial court did take into account wife's potential social security.

Appellant further contends that the trial court erred in its order that wife is to receive Forty percent of husband's "basic retirement benefit, before any adjustments thereto". The husband has remarried and argues that, under the applicable federal pension statutes, his current wife has an absolute entitlement to the survivor's annuity

portion of his retirement unless she waives her right to this annuity. As his current wife has not waived this right, husband submits that his basic retirement benefit shall be decreased substantially by this election. From our thorough review of the record we are unable to find that husband presented any testimony describing the financial impact of his remarriage. We are mindful that it was the husband's conscious decision to remarry. The effect his remarriage may have on his share of the pension does not relate to his former wife's interest in the marital estate.

Appellant also contends that the trial court abused its discretion by failing to consider the interest earned from date of separation to date of hearing on wife's IRA and profit sharing account. Because the value for different assets fluctuates substantially from time to time, the valuation date for marital property is generally to be the time of distribution. *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988). Yet where the evidence offered by one party is uncontradicted, the court may adopt this value although the resulting valuation would have been different if more accurate and complete evidence had been presented. See *Hutnik v. Hutnik*, 369 Pa.Super. 263, 535 A.2d 151 (1987). Absent a specific benchmark for valuation, the trial court is free to select the date which best serves to provide for economic justice between the parties. *Miller v. Miller*, 395 Pa.Super. 255, 577 A.2d 205 (1990). Here, as the trial court points out, the husband supplied date of separation figures for both the IRA and profit sharing accounts, and these figures were used in the court's determination. Since the court also notes that it did attempt to consider the accounts and their future value when it considered the disposition of husband's pension plan, the court did not abuse its discretion.

Appellant's last contention is that the trial court erred in its valuation of a parcel of West Virginia real estate. The parcel in question was a gift to the couple from the wife's mother. The wife submitted a written appraisal which valued the property at Twelve Thousand Five Hundred

Dollars ($12,500.00). (Counsel for husband had stated he had no objection to the use of the handwritten appraisal, N.T. 11–12–89 at 99). The husband presented expert testimony which valued the property at Twenty–Eight Thousand Dollars ($28,000.00). On the basis of countervailing testimony the trial court assessed the value of the disputed property to be Twenty–Thousand Dollars ($20,000.00). See *Semasek v. Semasek,* 509 Pa. 282, 502 A.2d 109 (1985). Since the trial court provided us with the benefit of its reasoning in reaching the determination of the value of the real estate, we find the court did not abuse its discretion.

Order affirmed.

HUDOCK, J., files a concurring and dissenting memorandum.

HUDOCK, Judge, concurring and dissenting:

I concur with so much of the majority's decision as finds no abuse of discretion in the trial court's valuation of the West Virginia real estate. However, I respectfully dissent from the other aspects of the majority decision.

Unlike the majority, I would find that the trial court erred and abused its discretion in its ordered distribution of Mr. Holland's (hereinafter "Husband") government pension to Lula Mae Williams Holland (hereinafter "Wife").[1] Husband does not argue fault in the court's utilization of the deferred distribution method; instead, he argues that the ordered distribution permits Wife to receive the benefit of service credits which he earns post-separation. The majority finds this permissible because of the fact that Wife must wait until some point in the future before enjoying the benefits of her portion of the marital share (the "coverture fraction") of Husband's pension. The majority further justifies its position because "later year wage increases are a

1. The court awarded Wife forty percent (40%) of that portion of Husband's basic retirement benefit which is determined to be part of the marital estate. The court found the coverture fraction could not be immediately determined since it chose the delayed distribution method in its award.

product of experience and longevity which were developed during the marriage."[2] At 60.

Although I share the majority's concern that a non-employed spouse may be required to wait, at his or her peril, to receive distribution of the pension funds, I believe the facts of this case permit an ordered distribution which properly allocates to each former spouse his or her equitable share, and yet affords both of them ample protection. In my opinion, the trial court should have viewed the date of separation as Husband's retirement date.[3] Basic benefits would be determined by averaging the highest three years' salary of the last five years of Husband's employment, as specified by the plan. This would have permitted the coverture fraction to be determined,[4] and therefore, the immediate allocation of the pension between the parties. An appropriate and acceptable qualified domestic relations order (QDRO) could then be drafted[5] specifying that Wife was to receive a particular monthly benefit and each parties' allocation segregated into separate ac-

**2.** There is, undoubtedly, some truth to this statement. However, there is not enough truth to it so as to permit any reliable consideration of the theory in equitable distribution. Additionally, the majority does not comment on the fact that Wife has a profit sharing plan and an Individual Retirement Account (IRA), both of which are, in part, the product of experience and longevity developed during the course of the marriage. I think it was incumbent upon the trial court to include both of these assets as part of the marital estate and justify its award thereof.

**3.** I realize that Husband has taken the position that the pension must be valued at the time of the divorce. (Brief for Appellant, at 12.) However, this Court has stated that "[o]nly that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property...." *Braderman v. Braderman*, 339 Pa.Super. 185, 196, 488 A.2d 613, 618 (1985). (Citation omitted).

**4.** The trial court determined the length of the marriage, the numerator of the coverture fraction, was 26.75 years. Wife's expert testified that the information in his possession indicated Husband's service computation date was June 21, 1954. However, Wife's expert was uncertain as to Husband's length of service as it appeared that there was additional credited service.

**5.** For a review of drafting considerations, see Massler, Qualified Domestic Relations Orders: A Statutory Analysis, 19 Seton Hall L.Rev. 224 (1989). See also, 5 CFR 831, et seq.

counts maintained by the pension fund administrator. Husband's civil service plan permits such alienation and also specifically requires that the participant spouse shall receive a reduced annuity so as to provide for a "former spouse annuity". 5 U.S.C. § 8345(j).

This approach would permit each party's account to grow, or diminish, in equal proportion and also maintain the parties in the same relative position that they would have been in had the marriage not ended. Each of the parties then becomes, effectively, a member of the pension fund with individual accounts and, as such, is subject to the fund's rules and regulations regarding withdrawals. Thus, if the plan administrator agrees, and the plan so authorizes, it is permissible for the benefits to be paid to the permissive distributee (e.g. the divorced, non-employee spouse) on or after the date that the participant spouse attains, or would have attained, the earliest retirement date. Massler, *supra.* If, as Wife's expert testified, Husband meets the plan's requirements of age and length of service so as to be presently eligible to receive annuity payments, Wife will also be eligible presently to receive her "deferred" distribution. In fact, a QDRO may require the plan to pay the permissive distributee or alternate payee "any type or form of benefit offered by the plan regardless of that chosen by the participant spouse." *Id.* at 227.[6]

Admittedly, the facts of the instant case complicate this approach because Wife remarried prior to reaching the age of 55. Husband's plan specifically disqualifies Wife from *currently* receiving a "former spouse annuity" because of this fact. 5 CFR 831.625. Despite this, I do not think Wife's claim for the pension is defeated. The parties separated on December 1, 1985 and a decree of divorce entered on June 29, 1987. Although Wife remarried on September 19, 1987 (R. 172a), her claim regarding the equitable distribution was not finalized by the trial court until December 7,

6. This approach would also eliminate most, if not all, of the "negative factors" associated with the deferred distribution method. See, Troyan, Pension Evaluation and Equitable Distribution, 10 FLR 3001, Monograph No. 1 (1983).

1989. I believe that Wife is entitled, at a minimum, to receive 40% of the coverture fraction of Husband's basic monthly entitlement, determined using the date of separation as his artificial retirement date as explained above, for the period between separation and August 31, 1987.[7] As previously discussed, however, the plan may be required to pay Wife any type or form of benefit offered by the plan.[8] The court should also order Husband to pay, when his pension goes into pay status, Wife an amount equal to what she was entitled to receive on a monthly basis from her "former spouse annuity".

I also believe it is necessary to vacate that portion of the trial court's decree of equitable distribution relating to Wife's Social Security benefit. It is clear that the court's consideration of this anticipated benefit was so intertwined with the issue of equitable distribution of Husband's pension that the court must be afforded an opportunity to reexamine the entire matter.

Hence, I would reverse and remand.

---

[7] 5 CFR 831.625 mandates that a former spouse annuity, or eligibility therefor, terminates on the last day of the month before the month in which the former spouse remarries before attaining age 55.

[8] Additionally, it is clear that the court's order did not comport with our recent decision in *Cornbleth v. Cornbleth,* 397 Pa.Super. 421, 580 A.2d 369 (1990) (CSRS participants should be equated with Social Security participants and the present value of the Social Security benefit should be deducted from the present value of the CSRS pension prior to determining the marital portion of the pension which is included in the marital estate for equitable distribution.)