681 A.2d 732

**William GORDON, Appellant,**

v.

**Rosemarie A. Feeney GORDON, Appellee.**

Supreme Court of Pennsylvania.

Re–Argued April 30, 1996.

Decided Aug. 2, 1996.

Order Amending Decision on Denial
of Reargument Oct. 15, 1996.

Stanley M. Shingles, Plymouth Meeting, for Appellant.

Julia McLaughlin, James D. Crawford, Philadelphia, for Appellee.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

FLAHERTY, Justice.

This case concerns various issues relating to the equitable distribution of a marital estate. The first issue concerns the valuation of a pension fund where equitable distribution occurs fifteen years after marital separation and the pension is already in pay status. The second issue is whether certain early retirement inducements accepted by the employee-spouse after separation, which have the effect of increasing his retirement benefits, are includable in the marital estate.

■ Rosemarie and William Gordon married on May 31, 1958. Mr. Gordon began working with Sun Oil Company in June of 1960 and worked there continuously for twenty-seven years, seventeen and one-half of which were during the marriage. The parties' two children are now emancipated. The parties separated on December 31, 1977. Mr. Gordon filed for divorce in 1979, and the case is proceeding under the Divorce Code of 1980.[1] A bifurcated divorce was granted on August 2, 1985, and after two equitable distribution hearings before a master, Mr. Gordon requested a de novo hearing. The trial court held six hearings between October 4, 1989 and April 11, 1991. On October 29, 1992 the trial court issued an order and opinion finding a marital estate of $677,406.[2] The court

---

1. The Divorce Code of April 2, 1980, P.L. 63, No. 26, § 401, as amended, 23 P.S. § 401, was repealed and substantially reenacted by Act of December 19, 1990, P.L. 1240, No. 206, § 2. See Part IV of the Domestic Relations Code, 23 Pa.C.S. §§ 3101–3707.

2. Superior Court writes:
   Nine hearings were held, yielding 900 pages of testimony. Now, fifteen years later, the record reads like a Dickens novel. As a result

divided the marital estate equally and formulated an equitable distribution scheme based on the immediate offset method of apportioning marital assets. The trial court valued the pension fund at its present value (at the time of the hearing), reduced by the coverture fraction.[3] At that time, the pension was in pay status. The court found that the estate consists of the following assets:

| | | |
|---|---|---|
| 1. | Marital residence | $161,000 |
| 2. | Mr. Gordon's Sun Oil Pension ($293,544 × .65 marital coverature fraction (17.5 years divided by 26.7 years = .65)) | $190,804 |
| 3. | Mr. Gordon's retirement benefits | |
| | a. Continuation pay ($88,749 × .65) | $ 57,687 |
| | b. Retirement bonus ($7,100 × .65) | $ 4,615 |
| | c. Orbit ($82,000 × .65) | $ 53,300 |
| 4. | Suncap Savings Account | $100,000 |
| 5. | Sun Oil Stock (465 marital shares at $56.00 per share) | $ 26,000 |
| 6. | Fair rental value of marital residence less Mrs. Gordon's credits for mortgage payments and maintenance | $ 84,000 |
| | TOTAL MARITAL ESTATE | $677,406 |

On appeal, Superior Court affirmed the trial court's valuation of the marital share of the pension and its identification, valuation and distribution of the balance of the marital estate, except that it excluded what the trial court referred to as "retirement benefits," items 3(a), (b), and (c) from the marital

of the parties' inability to settle their differences and their dissatisfaction with the trial court's evaluation and distribution of the marital estate, the litigation has now endured almost as long as the marriage. Slip Op. at 1 (Footnote omitted).

**3.** The coverture fraction is defined as:

that portion of the value of the pension that is attributable to the marriage. The numerator of the fraction is the total period of time the employee spouse was a participant in the plan from the date of the marriage until date of separation, and the denominator is the total period of participation in the pension plan.

*Berrington v. Berrington*, 534 Pa. 393, 398 n. 5, 633 A.2d 589, 591 n. 5 (1993).

estate.[4] Superior Court determined that items 3(a) and (b) did not accrue during the marriage. It rejected item 3(c) because it was an annuity purchased at retirement with funds that could not be traced to marital assets.

We granted allocatur to address two issues:

1. Whether in an immediate offset situation, the value of the marital-property portion of a defined benefit pension plan is to be determined by using the salary and benefits in effect on the date of separation or the date of retirement.

2. Whether the "continuation pay" and "retirement bonus" and "orbit" account or any combination or portion thereof should be deemed marital property for the purposes of equitable distribution.

The answers to both of these questions are controlled by our recent decision in *Berrington v. Berrington,* 534 Pa. 393, 633 A.2d 589 (1993). In *Berrington,* the primary issue was whether in a deferred distribution of marital assets the court could distribute as marital property a benefit based on the participating party's post-separation efforts, pay raises and contributions. We held that it could not:

> [W]e hold that in a deferred distribution of a defined benefit pension, the spouse not participating may not be awarded any portion of the participant-spouse's retirement benefits which are based on post-separation salary increases, incentive awards or years of service. Any retirement benefits awarded to the non-participant spouse must be based only on the participant-spouse's salary at the date of separation.

*Berrington,* 534 Pa. at 393, 633 A.2d at 594.

The rationale behind this holding is that the Divorce Code, 23 Pa.C.S. § 3501(a), excludes property acquired after separation from consideration as marital property. If after-separation property is not marital, it may not be part of the

4. After Mr. Gordon had filed his appeal, he trial court determined that it had erred in identifying the entire $100,000.00 of the Suncap savings account and 465 shares of Sun Oil stock as marital property. The Superior Court acknowledged the error and amended the trial court's order to reflect $44,001.75 as the marital share of the Suncap account and 157 shares as the marital portion of the Sun Oil stock.

marital estate. Superior Court's citation of cases notwithstanding, this analysis applies equally to cases in which there is a deferred distribution of marital assets and cases in which there is an immediate offset of marital assets. In no case may assets earned after separation be considered in calculating the value of a pension.[5]

The value of Mr. Gordon's pension,[6] therefore, should have been calculated at the time of equitable distribution utilizing the salary earned at the date of separation, the date Mr. Gordon will begin to receive pension benefits, and the appropriate mortality and interest discount rates. This calculation will, in an immediate offset case, give us the present value of the pension. The present value must then be reduced by the coverture fraction of .65. The end result is the marital portion of the present value of the pension. *See DeMasi v. DeMasi,* 366 Pa.Super. 19, 50, 530 A.2d 871, 886 (1987). Once the marital portion of the estate is identified, the share of the estate awarded to each spouse is then determined in accordance with their respective percentage shares of the marital estate.

The second question concerns what Mr. Gordon refers to as "retirement incentives." Mr. Gordon's employer announced in

**5.** Although this case involves immediate offset and *Berrington* involved deferred distribution, the fifteen year lapse between separation and equitable distribution is what brings this case within the parameters of *Berrington,* for in both cases post-separation events helped to produce the retirement benefit. *Berrington* addresses the problem how to treat post-separation events and holds that post-separation efforts, pay raises and contributions are to be excluded from the analysis of what constitutes a marital share of the retirement benefit.

**6.** In this case, involving an immediate offset, we speak of "valuing" the pension benefit. We note, however, that in a deferred distribution, one does not "value" the marital portion of the pension plan at the time of equitable distribution, because there are unknown factors, such as when the participant will retire and whether the formulation of the plan will change after equitable distribution. One identifies the marital share of the benefit, but one does not "value" it. In an immediate offset, however, one is dealing in the present instead of the future. The marital share of the pension is presently being offset against other marital property, and it is "valued" as of the date of equitable distribution. See *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988). In this portion of this case, we are primarily concerned about which salary is used to calculate value, the salary at separation or at retirement.

1987 a series of inducements to retire which were available to Mr. Gordon. The inducements consisted of a supplemental retirement income for a period of time based on years of service,[7] a bonus based on bonuses paid in recent years, and an annuity program (ORBIT), in which the employee paid 27% of the cost of the annuity and the employer paid 73%. The purpose of this inducement was to provide for inflation protection of retirement benefits by paying a three percent per year increase in these benefits for fifteen years.

The issue of how to treat these inducements to retire arises because the husband asserts that these benefits, which substantially increase the value of the pension, have nothing to do with Mr. Gordon's salary or pension benefits at the time of separation, and are, therefore, not part of the valuation of his pension for purposes of equitable distribution. Mrs. Gordon, however, points out that the previous passage from *Berrington* continues as follows:

> [S]hould there be increases in retirement benefits payable to the employee spouse between the date of marital separation and the date the non-participant spouse begins receiving benefits which are not attributable to the efforts or contributions of the participant-spouse, any such increased benefits may be shared by the non-participant spouse based upon his or her proportionate share of the marital estate.

534 Pa. at 403, 633 A.2d at 594.

Although the main thrust of *Berrington* was to determine the marital component in a deferred distribution of the participating spouse's pension at the time of separation, and thus follow the Divorce Code's prohibition of including property acquired after separation in the marital estate, we also recognized that some changes in the nature and value of the pension occurring after separation are of a different character in that they arise through no effort or expense on the part of the participating spouse. These changes in the pension not attributable to the participant's labors or contributions, therefore, are not regarded as property acquired after separation,

7. The value of this benefit is $88,749.00.

but as adjustments to the plan which should be available to both parties to the marriage. The purpose of the above-quoted passage from *Berrington* was to allow the non-participating spouse to benefit from changes in the plan which no one knew about at the time of equitable distribution, and which arose through no effort or expenditure on the part of the participating spouse.

Referring back to the most recently cited passage from *Berrington,* three questions must be answered in order to apply *Berrington* to this case. First, were there increases in retirement benefits payable to Mr. Gordon; second, were they payable between the time of marital separation and the time Mrs. Gordon begins receiving benefits; and third, were they produced by the efforts or contributions of Mr. Gordon?

As to the first question, it is plain that the retirement inducements of supplemental retirement income, bonus and the annuity resulted in an increase in retirement benefits to Mr. Gordon. Had he not chosen to accept the inducements, his retirement would have been less than it now is. Mr. Gordon's claim that these payments are not part of a retirement plan is without merit, for they are related only to his retirement.[8] It follows, therefore, that there were increases in retirement benefits payable to Mr. Gordon, and the first requirement is satisfied.

8.  Mr. Gordon argues that none of the three items which the trial court called "retirement benefits" has anything to do with retirement. First, he states that these benefits are not part of the company pension plan; second, that these benefits are not offered to everyone; third, that no one knew of the existence of these benefits when the parties separated; fourth, that no pension plan funds are used to pay for these benefits; and fifth, that in any event, these benefits did not accrue during the marriage.

   These arguments are without merit. The company, in offering inducements to retire, elected to augment the existing retirement plan. It is of no significance that not everyone is offered this augmentation or that the benefits are not paid for by pension plan funds. The company, in effect, on an ad hoc basis, simply amended its pension plan for the benefit of certain employees.

   As to the argument that the benefits did not accrue during the marriage, that argument is addressed in the text.

Second, the retirement inducement benefits were payable between the time of marital separation and the time Mrs. Gordon began receiving benefits, since the benefits did not exist at the time of separation, Mr. Gordon was being paid these benefits at the time of the hearing, and Mrs. Gordon had not yet begun to receive retirement benefits at the time of equitable distribution. The second requirement, therefore, is satisfied.

Third, for the most part, the increased benefits were not attributable to the efforts or contributions of Mr. Gordon. Supplemental retirement income and the bonus were simply benefits based upon years of service, and so required no effort or contributions from Mr. Gordon, but the ORBIT annuity, designed to protect the pension for a period of fifteen years against erosion from inflation, was paid 27% by Mr. Gordon and 73% by the employer.[9] The portion of the annuity paid for by the employer, but not the portion paid for by Mr. Gordon, therefore, is includable in the marital estate along with the supplemental retirement income and bonus. To the extent that the increased benefits were not the product of Mr. Gordon's present efforts or contributions, the third requirement is satisfied and these increased benefits are includable in the marital estate.

When one includes these three retirement inducements in the marital estate, however, one must recognize that the inducements were produced by Mr. Gordon's entire twenty-seven years of employment, not merely the seventeen and one-half years during which Mr. Gordon worked for Sun and was married. The inclusion of the inducement benefits in the marital estate, therefore, must be reduced by the coverture fraction.

9. Mr. Gordon paid roughly $27,000 to the ORBIT annuity from the Suncap savings account, a marital asset. Although this amount was paid before the marital share of that account had been determined, when the $27,000 is deducted from the Suncap account, there are still sufficient funds in the account to satisfy what was ultimately determined to be marital property. In short, Mr. Gordon's 27% contribution to the ORBIT annuity was paid from funds other than marital property funds, and was, therefore, properly excluded from the marital estate.

In sum, for purposes of an immediate offset, the value of the marital-property portion of Mr. Gordon's defined benefit pension is to be determined by using the salary on the date of separation, not the date it enters pay status, and the adjusted present value using that salary is to be multiplied by the coverture fraction to obtain the marital value. Superior Court erroneously included post-separation pay raises in violation of *Berrington.* In addition, because they are not attributable to the efforts or contributions of Mr. Gordon, the retirement inducements consisting of continuation of salary, the bonus, and the 73% of the ORBIT annuity are to be included in the marital estate, but are to be reduced in value by the coverture fraction.

Reversed and remanded to the Court of Common Pleas of Delaware County.

NIX, C.J., did not participate in the consideration or decision of this case.

NEWMAN, J., files a concurring opinion.

ZAPPALA, J., files a concurring and dissenting opinion in which NIGRO, J., joins.

CASTILLE, J., files a concurring and dissenting opinion.

NEWMAN, Justice, concurring.

I join in the majority opinion of Mr. Justice Flaherty. However, I write separately to explicitly reject application of *LaBuda v. LaBuda,* 349 Pa.Super. 524, 503 A.2d 971 (1986), *allocatur denied,* 514 Pa. 648, 524 A.2d 494 (1987), relied upon by the Superior Court below and Mr. Justice Castille in his concurring and dissenting opinion in analyzing whether Mr. Gordon's early retirement incentives are marital property.

Here, after more than eighteen years of marriage, Mr. Gordon obtained a divorce based on indignities to his person.[1]

1. The Divorce Code provides that the court may grant a divorce where, among other fault-based considerations, a spouse has "[o]ffered such indignities to the innocent and injured spouse as to render that spouse's condition intolerable and life burdensome." 23 Pa.C.S. § 3301(a)(6).

The trial court fixed the parties' separation date as December 31, 1977. In July 1987, before equitable distribution, Mr. Gordon accepted early retirement. As an incentive to select early retirement, Mr. Gordon accepted a retirement bonus, supplemental retirement income and an "ORBIT" annuity. Nearly fifteen years after separation, in October 1992, the trial court ordered equitable distribution of the marital estate,[2] applying the immediate offset method of distribution.[3]

2. Pursuant to the Divorce Code:

[i]n an action for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors, including:
(1) The length of the marriage.
(2) Any prior marriage of either party.
(3) The age, health, station, amount and source of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
(4) The contribution by one party to the education, training or increased earning power of the other party.
(5) The opportunity of each party for future acquisitions of capital assets and income.
(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker.
(8) The value of the property set apart to each party.
(9) The standard of living of the parties established during the marriage.
(10) The economic circumstances of each party, including Federal, State and local tax ramifications, at the time the division of property is to become effective.
(11) Whether the party will be serving as the custodian of any dependant minor children.
23 Pa.C.S. § 3502(a). Neither party has contested the trial court's equal division of the marital estate or the trial court's denial of alimony to either party.

3. Under the immediate offset method of distribution, the marital assets are divided at the time of the equitable distribution order, based on their present value. *Miller v. Miller*, 395 Pa.Super. 255, 577 A.2d 205, *allocatur denied*, 525 Pa. 664, 583 A.2d 794 (1990). As our Superior Court has explained, where, as here, the parties possess sufficient assets to offset the award of the pension to one party, the immediate offset method has the advantage of effectuating a final and immediate settlement of the distribution of assets between the parties. *Id. See also*

The trial court included in the marital estate Mr. Gordon's early retirement incentives, reduced by the coverture fraction. The court reasoned that these incentives were based upon Mr. Gordon's twenty-seven years of service with Sun Oil, and, thus, had accrued during the marriage.

Relying on *LaBuda,* the Superior Court reversed that part of the trial court's Order that included the early retirement incentives in the marital estate. In *LaBuda,* the husband accepted a special early retirement incentive program after the parties had separated. The *LaBuda* Court held that the early retirement incentive had not accrued during the marriage because, unlike basic pension benefits that the parties contemplated throughout the marriage, the parties did not anticipate the incentive plan during the marriage because it was offered unexpectedly by the employer after separation.

Following *Berrington v. Berrington,* 534 Pa. 393, 633 A.2d 589 (1993), I disagree that the unanticipated nature of the early retirement inducement is dispositive where, as here, the increased benefits are part of the participant spouse's retirement package based on years of service during the marriage and are not the product of any post-separation efforts or contributions of the participant spouse.

In *Berrington,* which involved deferred distribution, this Court held that post-separation increases in retirement benefits payable to the participant spouse that are not attributable to the post-separation efforts or contributions of the participant spouse may be shared by the non-participant spouse based on his or her proportionate share of the marital estate.[4]

*Berrington v. Berrington,* 534 Pa. 393, 400 n. 7, 633 A.2d 589, 592 n. 7 (1993).

**4.** In *Berrington,* this Court referred to Section 401(e) of the Divorce Code of April 2, 1980, which as substantially reenacted specifically provides:

**General rule.**—As used in this chapter, **"marital property"** means all property acquired by either party during the marriage, including the

The *Berrington* rationale is designed to provide the non-participant spouse the benefit of favorable changes in the benefits payable owing to factors not attributable to the participant spouse's post-separation efforts or contributions between the date of separation and the date the non-participant spouse begins receiving his or her portion of the pension benefits. Nothing in *Berrington* limits application of this rationale to cases involving deferred distribution. To the contrary, where, as here, equitable distribution does not occur until fifteen years after separation, application of the *Berrington* rationale properly avoids awarding the non-participant spouse non-marital property and allows him or her to receive a marital share increased in value proportionate to the increase in value the participant spouse enjoys through factors not attributable to that spouse's post-separation efforts or contributions.

For these reasons, I join the majority's determination that the retirement bonus, the continuation pay and part of the ORBIT annuity, reduced by the coverture fraction, are to be included in the marital estate.

ZAPPALA, Justice, concurring and dissenting.

I join in the concurring and dissenting opinion of Justice Castille except as it relates to the ORBIT account. I would exclude the entire ORBIT account, consisting of both employer and employee contributions, from marital property for the reasons articulated by the Superior Court:

In his fifth claim, Husband argues that the trial court improperly characterized his Optional Retirement Benefit Investment Trust (ORBIT) as a marital asset. ORBIT was

increase in value, prior to the date of separation, of any nonmarital property acquired pursuant to paragraphs (1) and (3), except:

\* \* \* \* \* \*

(4) Property acquired after final separation until the date of divorce, except for property acquired in exchange for marital assets. 23 Pa.C.S. § 3501(a)(4). Accordingly, we held in *Berrington* that the non-participant spouse may not be awarded any portion of the participant spouse's retirement benefits that are based on post-separation salary increases, incentive awards or years of service.

offered by Sun Oil Company in 1981, four years after the parties separated. Although separate from the early retirement incentive program offered by Sun Oil in 1987, ORBIT increased Husband's monthly retirement benefit beginning in July of 1988. Although Husband purchased ORBIT with funds ($27,033.47) from the Suncap Account, we do not find this dispositive here. This was an option offered to Husband four years after separation; at that time, the funds in the Suncap Account had not been distributed into marital shares. It is impossible to tell at this point whether any of the marital portion of the Suncap Account was used to purchase ORBIT and we cannot speculate that it was.

*Gordon v. Gordon,* 436 Pa.Super. 126, 147, 647 A.2d 530, 540 (1994).

NIGRO, J., joins in this concurring and dissenting opinion.

CASTILLE, Justice, concurring and dissenting.

I agree with the Opinion Announcing the Judgment of the Court that the Superior Court erred in its analysis regarding the valuation of Mr. Gordon's pension. However, I disagree with its determination that the Superior Court erred by excluding the "continuation pay" and "retirement bonus" from marital property. In making the determination that these assets should be included as marital property, the Opinion Announcing the Judgment of the Court relies upon this Court's reasoning in *Berrington v. Berrington,* 534 Pa. 393, 633 A.2d 589 (1993), which provides that a non-employee spouse should be able to share in any increases in pension benefits which occurred post-separation but were not attributable to the efforts or contributions of the participating spouse. *Id.* at 403, 633 A.2d at 594. This rationale, however, was designed for circumstances dictating a deferred distribution and attempts to compensate the non-employee spouse for waiting to receive his or her portion of the pension benefits. *Id.* at 414, 633 A.2d at 600; *Holland v. Holland,* 403 Pa.Super. 116, 588 A.2d 58 (1991), *alloc. denied,* 528 Pa. 611, 596 A.2d

158 (1991).   As we are dealing with an immediate offset situation in this case, this reasoning is not applicable.[1]

■   I believe that the "continuation pay" and "retirement bonus" fall squarely under *LaBuda v. LaBuda,* 349 Pa.Super. 524, 503 A.2d 971 (1986), *alloc. denied,* 514 Pa. 648, 524 A.2d 494 (1987), the crucial factor being the determination of when the party accrued the "right" to the benefit in question.   *Id.* at 533, 503 A.2d at 976.   As the Superior Court points out, this early retirement incentive program was not a benefit offered on a continuous basis;   rather, it was offered by the company during times of down-sizing or reorganization.   During the marriage or at the time of separation, Mr. Gordon had no "right" to this benefit.   In fact, in her brief to this Court, Mrs. Gordon acknowledged that there was only a "possibility" that Mr. Gordon could benefit from an early retirement program. (Appellee's Brief at 21).   Mr. Gordon's "right" accrued when he was offered the package in 1987 during reorganization of his department.   Furthermore, it appears that these incentives were not provided in lieu of any of the original pension benefits which accrued during the marriage;   rather they were given in addition to those benefits.   Therefore, these benefits should be excluded from the marital estate.   Accordingly, I write separately as I would affirm the Superior Court's determination of this issue.

Moreover, I disagree with the determination of the Opinion Announcing the Judgment of the Court that the employer's contribution of $73,000 toward the purchase of the ORBIT account should be included as a marital asset.   Rather, I agree with the Superior Court that the entire ORBIT account should be excluded from marital property because this incentive was offered to appellant four years after the date of separation.

1.   The Opinion Announcing the Judgment of the Court may argue that the fifteen year lapse between the separation and equitable distribution would bring this case under the reasoning in *Berrington,* but I do not believe that the parties' inability to settle this matter in a reasonable amount of time should dictate the determination of what should be included as marital property.

406

*ORDER*

And now this 15th day of October, 1996, appellant's request for reargument is denied. The order of August 2, 1996 is amended as follows. The order of Superior Court is reversed as to Issue 1. The order of Superior Court is affirmed by an evenly divided court as to Issue 2.