J-A02043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THOMAS E. BORTZ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| STACIE L. BORTZ | : | |
| | : | No. 1147 MDA 2015 |

Appeal from the Order Entered June 23, 2015
in the Court of Common Pleas of Lycoming County Civil Division
at No(s): FC-2012-021531-D1

BEFORE: PANELLA, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED APRIL 27, 2016**

Appellant, Thomas E. Bortz ("Husband"), appeals from the order

entered in the Lycoming County Court of Common Pleas. Husband contends

the Qualified Domestic Relations Order ("QDRO") regarding his City of

Williamsport Police Pension Plan is not consistent with his and Appellee's,

Stacie L. Bortz's ("Wife"), Marriage Settlement Agreement ("MSA").[1] We

affirm.

At the hearing on the Petition for Contempt/Petition for Enforcement of

Property Settlement Agreement filed by Wife on April 17, 2015, the parties

stipulated, *inter alia*, to the following facts: "[T]hey entered into a [MSA]

---

[*] Former Justice specially assigned to the Superior Court.

[1] The MSA is also referred to as a Property Settlement Agreement. For
consistency, we refer to it as a MSA.

dated December 5, 2013."[2]  R.R. at 25a.  "[T]hey hired Jonathan Cramer of Conrad Siegal to prepare the  QDROs, the three (3) QDROs referenced in that [MSA]."  *Id.*  "[T]hey obtained drafts of the three (3) QDROs from Mr. Cramer and . . . the plan administrators of each of the three (3) pension plans approved the [QDROs] as drafted by Jonathan Cramer."  *Id.* at 25a-26a.  Wife signed the QDROs.  *Id.* at 26a.  Husband has not executed the QDROs.  *Id.*  "The parties agree that they were married on December 18, 2004 and they separate[d] on October 24, 2012."  *Id.* at 29a.  They stipulated that the agreement was "that the martial portion would be divided 55/45."  *Id.* at 32a.

The MSA provided, *inter alia*, as follows:

> 16. **Employment Benefits.**  The parties hereto have reached agreement regarding the retaining of and distribution of their respective employment benefits as follows:
>
> &#42;  &#42;  &#42;
>
> B. **Wife's retirement.**  The parties agree that all of the marital portion of Wife's retirement account(s) and/or pension plan(s) through her employment with Lycoming County shall be divided between the parties such that Wife will receive Fifty-Five Percent (55%) of the martial portion and Husband will receive Forty-Five (45%) of the martial portion pursuant to current law.  For purposes of determining the marital portion, the parties agree that they were married on December 18, 2004, and they separated on October 24th, 2012.  In the event the parties need to prepare a [QDRO] for purposes of dividing Wife's

---

[2] **See** R.R. at 5a-15a.  For convenience, we refer to the reproduced record where applicable.

retirement account(s) and/or pension plan(s), they agree to hire a third party to prepare the necessary paperwork and will equally share the expense associated therewith.

C. **Husband's Retirement.** The parties have agreed to divide all of the marital portion of Husband's retirement account(s) and/or pension plan(s) through his employment with the City of Williamsport in such a manner that Wife shall receive Fifty-Five(55%) of the marital portion and Husband will receive Forty-Five Percent (45%) of the marital portion pursuant to current law. For purposes of determining the marital portion, the parties agree that they were married on December 18, 2004, and they separated on October 24th, 2012. In the event the parties need to prepare a [QDRO] for purposes of dividing Husband's Retirement Account(s) and/or pension plan(s), they agree to hire a third party to prepare the necessary paperwork and will equally share the expense associated therewith.

D. **Husband's Deferred Compensation Account.** The parties agree to divide the marital portion of Husband's deferred compensation account such that Wife will receive Fifty-Five Percent (55%) of the partial portion of the account and Husband will receive Forty-Five Percent (45%) of the marital portion of the account pursuant to current law. For purposes of determining the marital portion, the parties agree that they were married on December 18, 2004, and they separated on October 24th, 2012. In the event the parties need to prepare a [QDRO] for purposes of dividing Husband's Deferred Compensation Account, they agree to hire a third party to prepare the necessary paperwork and will equally share the expense associated therewith.

MSA, 12/5/13, at 12a-13a.

Paragraph 7 of the QDRO which applies to Husband's City of Williamsport, PA Pension Plan states, in pertinent part, as follows:

7. This [Q]DRO assigns to [Wife], an amount equal to 55.0% of the marital portion of [Husband's] accrued retirement benefit under the Plan as of [Husband's] date of

- 3 -

retirement. The marital portion of [Husband's] accrued retirement benefit equals the monthly retirement benefit, payable in the normal form of payment for [Husband's] lifetime, multiplied by a fraction equal to 7.85 years (the period from December 18, 2004, date of marriage, until October 24, 2012, date of separation) divided by the years of credited benefit service (including any partial year credited) earned by [Husband] as of the date his benefit accruals cease. If any cost-of-living increase or other increase is applied to the pension payable to [Husband], the same increase shall apply to [Wife's] share, but only to the extent permitted by the Plan and state law.

Trial Ct. Order and Op., 6/23/15, at 44a-45a (quotation marks omitted).[3]

On June 23, 2015, the trial court entered an order providing, *inter alia*, that "Husband is hereby ORDERED and DIRECTED to sign the Domestic Relations Order in regard to his City of Williamsport Police Pension Plan as drafted by Conrad Siegel . . . ." **Id.** at 51a. This appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a Pa.R.A.P. 1925(a) opinion relying upon its order and opinion of June 23, 2015.

Husband raises the following issues for our review:

I. Did the Trial Court err and/or commit an abuse of discretion in finding that the language of Paragraph 16 B. through D. in the parties' [MSA] is clear and unambiguous?

II. Did the Trial Court err and/or commit an abuse of discretion in its decision of June 23, 2015, regarding the parties' [MSA] relative to equitable distribution, and specifically in finding that the [QDRO] regarding [ ] Husband's City of Williamsport Police Pension Plan, as

---

[3] The Domestic Relations Order was docketed July 17, 2015. **See** R.R. at 53a-56a.

drafted by Conrad Siegel, is consistent with the terms of the parties' [MSA] dated December 5, 2013?

Husband's Brief at 4.

Husband contends that the language in the MSA agreement, *viz*., "pursuant to current law," in paragraph 16 B. through D. is ambiguous. ***Id.*** at 14. He claims that the phrase refers to contract law and not to "the statutory law [*viz.*, 23 Pa.C.S. § 3501(c)(1),] regarding the division of defined benefit retirement plan." ***Id.*** Based upon this Court's holding in ***Bianchi v. Bianchi***, 859 A.2d 511 (Pa. Super. 2004), Husband contends Wife "cannot benefit from post-separation increases in [Husband's] pension . . . ." if they are attributable to his "efforts and/or contributions." ***Id.*** at 17-19. Husband states that the QDROS "are legally incorrect as they include, as a benefit to Wife, post separation monetary contributions made by the efforts and/or contributions of Husband . . . ." ***Id.*** at 19.

We address Husband's issues together because they are interrelated. In conducting our review of the court's holding as to the MSA, we are guided by the following principles:

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.
>
> . . . On appeal from an order interpreting a marital settlement agreement, we must decide whether the

trial court committed an error of law or abused its discretion.

**Kraisinger v. Kraisinger**, 928 A.2d 333, 339 (Pa. Super. 2007) (citations omitted).

The Pennsylvania Supreme Court in **Smith v. Smith**, 938 A.2d 246 (Pa. 2007) held, *inter alia*, that "courts . . . should allocate the pension between its marital and nonmarital portions solely by use of a coverture fraction" pursuant to 23 Pa.C.S. § 3501(c) (quotation marks omitted). **Id.** at 259.

> In 2004, . . . the legislature attempted to address the confusion in our law by adding a subsection to the Divorce Code regarding the distribution of defined benefit pensions. In relevant part, § 3501(c) provides:
>
> (c) Defined benefit retirement plans.-Notwithstanding subsections (a) [General Rule regarding marital property], (a.1) [Measuring and determining the increase in value of non-marital property] and (b) [Presumption that all property acquired during the marriage is marital]:
>
> > (1) In the case of the marital portion of a defined benefit retirement plan being distributed by means of a deferred distribution, the defined benefit plan shall be allocated between its marital and nonmarital portions solely by use of a coverture fraction. The denominator of the coverture fraction shall be the number of months the employee spouse worked to earn the total benefit and the numerator shall be the number of such months during which the parties were married and not finally separated. The benefit to which the coverture fraction is applied shall include all postseparation enhancements except for enhancements arising from postseparation monetary contributions made by the employee spouse, including the gain or loss on such contributions.

\* \* \*

23 Pa.C.S. § 3501 (emphasis omitted).

Significantly, in its official comments, the legislature specifically addressed this Court's prior holdings regarding the distribution of defined benefit pensions, criticizing the lead opinion in **Berrington** [**v. Berrington**, 633 A.2d 589 (Pa. 1993)], which valued the pension utilizing the salary at the time of separation, and commending the analysis offered in **Gordon** by Justices Flaherty, Cappy, and Newman, and by the Superior Court in **Holland v. Holland**, [ ] 588 A.2d 58 ([Pa. Super.] 1991).

> New subsection (c) seeks to reverse **Berrington** [ ] to adopt a coverture fraction methodology along the lines of **Holland** [ ] and **to include all postseparation enhancements except for postseparation monetary contributions by the employee spouse in the value of the pension.** The new language codifies the result reached by Justices Flaherty, Cappy and Newman regarding the postseparation retirement enhancements in **Gordon v. Gordon**, [ ] 681 A.2d 732 ([Pa.] 1996) (3-3 decision on this issue, affirming the Superior Court's exclusion of the enhancements from the marital estate). Three early retirement inducements were at issue in **Gordon**. The justices listed above opined that since no present efforts or contributions of the employee spouse were required to receive the supplemental retirement income and bonus inducements, they were includable in the marital estate. The third inducement was an annuity paid for partially by the employee spouse and partially by the employer. Justices Flaherty, Cappy and Newman would have included the portion of the annuity paid for by the employer in the marital estate.

23 Pa.C.S. § 3501(c), cmt.

As we must defer to the legislature as the policy making body, we conclude that the holding in **Berrington** no longer controls regarding the use of the salary at time of

separation. Instead, we honor the legislature's unequivocal intention to utilize the coverture fraction to provide economic justice between the parties, as discussed by the Superior Court in ***Holland***:

> A delayed distribution of pension benefits requires the non-employed spouse to wait until some indefinite time in the future to receive the marital share. To compensate for this postponement of benefit, that spouse is permitted to enjoy increases in value occasioned by continued employment of the worker. Also, the employed spouse increases the non-marital share of the benefits since continuing service enlarges the denominator. Further, later year wage increases are a product of experience and longevity which were developed during the marriage. The [employee-spouse] . . . can look forward to the benefits which accrue from a vested pension. His former spouse is entitled to share in any increase in value of the marital share which may occur by [the employee-spouse's] continued employment.

***Holland***, 588 A.2d at 60. Accordingly, rather than using the salary at the time of separation, courts instead should allocate the pension "between its marital and nonmarital portions solely by use of a coverture fraction." 23 Pa.C.S. § 3501(c). Thus, **the non-employee spouse "is permitted to enjoy increases in value occasioned by continued employment of the worker."** ***Holland***, 588 A.2d at 60. In the simplest of cases, the determination of the marital portion of a defined benefit pension will entail a straightforward application of the coverture fraction to the final total value of the pension, even though the value has increased due to years of postseparation employment.

***Id.*** at 257-59 (emphases added and footnote omitted).

In the case *sub judice*, the trial court opined:

> The [c]ourt finds that the language of Paragraph 16B. through D. in the parties' [MSA] is clear and unambiguous. The parties agree that Wife would receive 55% of the marital portion and Husband would receive 45% pursuant to current law. At the time the parties executed the

> [MSA,] the current law regarding the division of defined benefit retirement plans was outlined at 23 Pa.C.S.A. § 3501(c)(1) . . . .

Trial Ct. Order and Op. at 46a.

In the instant case, the QDRO employed the coverture fraction. It stated:

> The marital portion of [Husband's] accrued retirement benefit equals the monthly retirement benefit, payable in the normal form of payment for [Husband's] lifetime, multiplied by a fraction equal to 7.85 years (the period from December 18, 2004, date of marriage, until October 24, 2012, date of separation) divided by the years of credited benefit service (including any partial year credited) earned by [Husband] as of the date his benefit accruals cease.

R.R. at 45a. This was consistent with the MSA which provided, *inter alia*, as follows:

> The parties have agreed to divide all of the marital portion of Husband's retirement account(s) and/or pension plan(s) through his employment with the city of Williamsport in such a manner that Wife shall receive Fifty-Five (55%) of the marital portion and Husband will receive Forty-Five Percent (45%) of the marital portion pursuant to current law. For purposes of determining the marital portion, the parties agree that they were married on December 18, 2004, and they separated on October 24th, 2012.

R.R. at 12a-13a.

Husband's argument that the MSA is ambiguous as to the reference to "current law" is unavailing. Section 3501(c)(1) is the applicable "current law" in the instant case. *See Smith*, 938 A.2d at 258-59. As the Pennsylvania Supreme Court held in *Smith*, we are bound by the

"legislature's unequivocal intention to utilize the coverture fraction to provide economic justice between the parties . . . ." *See id.* at 258. "[R]ather than using the salary at the time of separation, courts instead should allocate the pension 'between its marital and nonmarital portions solely by use of a coverture fraction.'" *Id.* at 259 (citation omitted). Therefore, Wife "is permitted to enjoy increases in value occasioned by continued employment of" Husband postseparation. *See id.* at 259. The QDRO in the instant case utilizes the coverture fraction. *See id.* at 258. Therefore, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2016