**Martinez v. Martinez**

*Kenneth C. Myers*, for plaintiff.
*Dawn M Palange*, for defendant.

BUCCI, *J.*, January 22, 2014—

## Factual and Procedural Background

The parties to the above-captioned divorce, plaintiff Amaryllis Martinez (hereinafter, "wife") and defendant Ivan R. Martinez (hereinafter, "husband") were married on November 26, 1988. Wife vacated the marital residence on September 17, 2006 and filed a complaint in divorce on September 22, 2006, which complaint included claims for equitable distribution, alimony *pendante lite* ("APL"), counsel fees and expenses. Husband never filed an answer or counterclaim, and did not seek child support. Wife did not pursue her claims for alimony or APL. Wife filed for

bankruptcy after the date of separation.

The parties appeared for a hearing before Divorce Master Patricia Frankel on May 11, 2011. At the time of this master's hearing, the parties had been separated for more than four years. Husband's earnings were approximately $61,000 per year and he was receiving $4,478 per month in distributions from his pension stemming from his previous position as a City of Reading police officer. The master found that wife's earnings at that time were approximately $70,000.00 per year[1].

Husband's pension was not in pay status at the time the parties separated, but had entered into pay status by the time of the 2011 master's hearing. At the master's hearing, husband's pension was valued as of October 27, 2009 by Pension Appraisers, Inc. at $2,033 per month, or $574,771.66 ($474,787.63 after application of the Social Security offset) (*See* Exhibit D-7).

Wife has a federal pension (referred to herein as her "FERS" plan), valued at the time of the 2011 master's hearing at $74,853.00, as well as a federal Thrift Saving Plan ("TSP"), then valued at $71,350.00[2].

Master Frankel relied on the values provided by the parties' experts in reaching her ultimate recommendation. She omitted wife's TSP and also did not include the value of the pension payments husband had already received by the time of the hearing, which would have commenced upon his retirement on January 19, 2010. It is unclear if

---

1. Wife disputes this amount.

2. Wife's TSP was not included in Master Frankel's equitable distribution scheme.

these numbers were meant to offset each other or if Master Frankel did not consider them to be marital property subject to distribution, but, regardless, they were not included. Master Frankel recommended that husband retain the parties' marital residence located at 338 West Walnut Tree Drive, Blandon, Berks County, Pennsylvania (hereinafter, the "marital residence") with a net value of $46,700, the parties' rental property located at 134 North 10th Street, Reading, Berks County, Pennsylvania (hereinafter, the "rental property") with a net value of $22,500, two vehicles valued together at approximately $12,800 and certain other items of property for a total of $89,043. She further recommended that husband pay to wife $1,017 per month, which is 50% of the appraised $2,033 monthly value of husband's pension. Master Frankel recommended that wife retain her entire FERS pension valued at $74,853, as well as a small bank account and the proceeds from a life insurance policy. Wife was also to receive a one-time payment of $5,000 from husband. In sum, wife would have received or retained $81,518 in property at the time of the distribution $1,017 per month until wife begins to receive social security benefits.

Both parties filed exceptions to the above recommendation. Wife challenged the recommendation and asserted that the master erred by: (1) failing to include the value of husband's monthly pension payments received to date, (2) miscalculating the marital portion of husband's pension in pursuant to 23 Pa.C.S.A. §3501(c)[3],

---

3. We note that the master did refer to the coverture fraction in her recommendation, but because she valued husband's pension as of the date of separation, the coverture fraction is 100% or 1.0. Accordingly

(3) failing to award counsel fees, (4) awarding husband a greater portion of the marital assets, (5) not giving wife credit for the debts she discharged in bankruptcy, (6) overstating wife's earnings, (7) refusing to hold open the record for additional evidence regarding the present value of husband's pension, (8) failing to consider the benefit to husband of the rental property, such as rental income or tax benefits, (9) considering husband's contributions to the parties' children's higher education expenses, and (10) failing to consider that husband's receipt of non-marital retirement benefits substantially increased husband's income beyond wife's income. Wife then also filed a supplemental exception: that the master erred in recommending that wife's receipt of her share of husband's pension would terminate one year after wife begins to receive her social security benefits.

Husband also filed exceptions to the master's recommendation, in which he alleged that the master erred by (1) determining that wife should receive a share of husband's pension until after she begins receiving Social Security benefits rather than placing a specific termination date on her receipt of such benefits, (2) failing to utilize the real estate appraisal dates closest to the date of distribution (3) including the Ford truck as a marital asset where it was obtained after the date of separation, (4) failing to deduct the cost of sale of the real estate in contravention of 23 Pa.C.S.A. §3502(10.2), and (5) including $3,000 in the Pagoda Credit Union joint account as a marital asset where the monies were deposited by husband post-separation,

---

she considered the entire $2033 to be marital, and simply divided it on a 50/50 basic.

and were post-separation earnings.

Both parties filed exceptions to the master's omission of the wife's TSP pension account.

We considered the above issues, and, following a hearing on the parties' exceptions, we entered findings and a final decree. In our decree, issued February 22, 2012, we granted both parties' exceptions regarding wife's TSP. The remainder of wife's exceptions were denied, withdrawn or deemed irrelevant at argument. We denied all of husband's exceptions except as follows: we agreed that wife's receipt of her share of husband's pensions should terminate on a date certain, that the master should have used the most recent appraisals for the real estate, and that the value of the real estate should have been reduced by the cost of sale. Because we added over $70,000 to the value of the marital estate in the form of wife's TSP, our final distribution left each party with $102,195. Since wife was retaining both her TSP and her FERS pension with a combined value of $146,203, wife was required to pay husband a lump sum of $45,672.50 to equalize the distributions. Wife would have continued to receive a monthly distribution of $1,017 out of husband's pension under our 2012 decree. We acknowledge that we did not address any payments husband had received from the date of his retirement on January 19, 2010.

In our 2012 decree, we followed Master Frankel's recommendation and utilized the "date of separation" value of husband's pension ($2,033) and divided that number equally between the parties. We did not account for any Social Security offset and we also allowed wife to

retain both of her pensions.

Both parties requested reconsideration of the decree and, following a hearing before this court, we remanded the matter back to the master[4] for additional fact-finding proceedings. We felt constrained to seek additional facts under the particular circumstances of this case. The primary issue was how to equitably divide the parties' pensions where husband's pension distributions include post-separation enhancements and is in pay status, whereas wife's pension will not be in pay status for a significant period of time. Master Frankel had avoided this dilemma by utilizing the parties' pension values as of the date of separation, however both parties filed exceptions to her recommendation and wife argued that the coverture fraction should be applied to husband's current pension payment to determine the marital share.

Based on our remand order, the parties appeared before Master Shucker. Rather than conducting a hearing and providing the court with the specific information requested, the parties provided Master Shucker with proposed findings of fact, conclusions of law and proposed decrees, and also obtained updated pensions valuations. The parties then met with Master Schucker on November 26, 2012 and stipulated to various facts. Master Schucker submitted a report and recommendation, utilizing the updated valuations provided by the parties and the coverture fraction methodology in calculating the marital portion of the parties' pensions. The parties declined or

---

4. Master Frankel had retired during the pendency of this case, and therefore it was heard by Master Louis Shucker.

were unable to provide the amount of husband's current pension that is attributable solely to his post-separation purchase of 4.75 years of service or the increase in value of his pension due to his post-separation contributions for the 3.3 years between the date of separation and husband's retirement. Moreover, they did not address how to determine an equitable manner in which to offset the pensions, where husband is and has been receiving his pension distributions for nearly four years but wife will not receive a check for more than a decade. It seems highly inequitable to offset husband's payment to wife by the full amount of husband's portion of the marital share of wife's FERS pension where she is not receiving said payments, but it is similarly unfair to allow wife to retain 100% of her FERS pension while ordering husband to pay wife her full share of the marital portion of his pension.

Ultimately, Master Shucker found that the application of the average of the two experts' proposed coverture fractions to husband's current monthly benefit results in the amount of $2,917, which he then reduced by 13% to reflect a Social Security offset, for a final marital value of $2,535. The master also found that the application of the average of the two experts' proposed coverture fractions to the present value of wife's FERS pension results in the amount of $1,017 per month. He recommended that husband pay to wife $1,289[5] (50% of the marital portion of husband's pension) per month until wife reaches the age of 59 1/2, after which point the payments were to be reduced to $759.00 per month to reflect the parties'

---

5. We calculate 50% of $2,535 to be $1,267, not $1,289.

offsetting pensions once wife is entitled to receive her FERS pension.

The master further recommended that wife receive 50% of the payments husband has received from his pension since January 20, 2010 (which the master calculated to be $43,684 as of the date of the hearing), her TSP valued at $70,620, the proceeds from the Pagoda account ($565) and the Metropolitan Life Insurance Policy (($1,100). He recommended that husband receive the marital residence ($20,445) the rental property ($11,225) the Ford Truck ($8,310), the Volvo ($4,590), the 2006 tax refund ($2,663), the Stratos Boat ($41,975), the Caravelle Boat ($4,305), and the Pagoda Checking ($3,000). Wife was ordered to pay husband $11,549 so that each party received a total distribution in the amount $104, 421.

Despite the numerous stipulations of fact upon which the master's report and recommendation was premised, the parties again each filed exceptions.

Presently pending before the court are the exceptions and counter-exceptions of the parties to Master Shucker's recommendation. In her exceptions, wife asserts that the master erred in (1) failing to value the marital residence as of the date the parties transferred title in November of 2006 (2) not calculating the net equity of the marital residence based on this 2006 value, (3) failing to utilize the 2009 value of the rental property, and (4) failing to utilize the 2009 value in calculating the net value of the rental property (5) reducing the value of the parties' real estate by the presumed expenses of sale, (6) failing to award wife more than 50% of the marital estate, (7) and

failing to award wife counsel fees. Wife also contends that certain of husband's exceptions are barred or waived, which we address below. For his part, husband asserts that the master erred by (1) recommending that wife receive $1,289 per month from husband's pension until she reaches the age of 59 1/2, and then $759 per month for the remainder of her life, (2) recommending that the value of the rental property be determined based on the appraised value of $47,000 rather than the more up-to-date appraised value testified to at the 2011 master's hearing of $36,000, (3) applying the coverture fraction to determine the marital share of husband's pension where all of the post-separation increase in value is based on post-separation years of service and appreciation, (4) inequitably allowing wife to benefit from the nearly 100% increase in the value of husband's pension between the date of separation and the date he began receiving his monthly pension benefits.

In consideration of the currently pending cross-exceptions, were hereby enter the following:

## FINDINGS OF FACT

1. The parties were married on November 26, 1988.

2. The parties separated on September 17, 2006.

3. Two children were born of the marriage: Ivan R. Martinez Jr., born March 31, 1989, and Ethan G. Martinez, born June 29, 1993 (the "children").

4. The children are emancipated.

5. Husband was born on March 20, 1966.

6. Wife was born on July 30, 1965.

7. The parties are both employed on a full-time basis and in good health.

8. Both parties contributed to the household financially during the 18 years of cohabitation and both parties contributed to the upbringing of the children, although the children remained in husband's custody following wife's departure from the marital residence.

9. During the marriage, husband was employed as a City of Reading Police Officer.

10. Husband continued his employment with the City of Reading from the date of separation until January 19, 2010. Therefore, 3.3 years of his employment with the City of Reading occurred post-separation.

11. Following separation and during the pendency of this litigation, husband commenced employment with the Berks County District Attorney's Office on January 20, 2010, where he is presently employed. In addition, at the time of the 2011 master's hearing, husband was an instructor at the Reading Police Academy earning approximately $2,031 per year.

12. In addition to his salary, husband receives a monthly pension distribution from his City of Reading pension in the amount of $4,478 per month, or $53,736 per year.

13. Throughout the marriage, and continuing until the present, wife is employed by the United Sates Probation and Parole Service. Her average income is approximately $65,000.

14. Following separation, husband remained in the

marital residence and wife did not contribute to the maintenance or upkeep of the marital residence. The parties, by agreement, transferred title of the marital residence from both parties' to husband's name only on November 27, 2006. At the time of the transfer, the appraised value of the marital residence was $235,000.

15. The marital residence was appraised in September of 2009, and determined to have a value of $206,000.

16. The marital residence was appraised in October of 2009, and determined to have a value of $210,000.

17. On May 11, 2011 appraiser Michael McDevitt testified before the master that the current market value of the marital residence was $196,500.

18. The mortgage balance on the marital residence as of April 11, 2011 was $162,289.15.

19. The net equity of the marital residence as of the date of the 2011 master's hearing, therefore, was $34,210.85 before deducting 7% cost of sale.

20. In addition to the marital residence, the parties jointly own a rental property in the City of Reading. Husband has had sole possession, use, control and responsibility for the management and maintenance of the rental property since the date of separation. At the time of the 2011 master's hearing, there had been no rental income derived from the rental property since the date of separation.

21. The marital residence and the rental property were appraised several times, and the appraised values represent a marked decline in value over time.

22. On May 11, 2011 appraiser Michael McDevitt testified before the master that the current market value of the rental property was $36,000.[6]

23. For purposes of equitable distribution, the value of the marital residence will be reduced by 7%, which represents the industry-standard 6% sales commission plus the seller's half of the 2% transfer tax imposed on all real estate transfers within the county (i.e., 1%).

24. Therefore, for purposes of equitable distribution, the net value of the marital residence shall be $20,455.85 ($196,500, less the $162,289.15 mortgage, less $13,755 (7% of $196,500.00)).

25. For purposes of equitable distribution, the value of the rental property will be reduced by 7%, which represents the industry-standard 6% sales commission plus the seller's half of the 2% transfer tax imposed on all real estate transfers within the county (i.e., 1%).

26. For purposes of equitable distribution, the net value of the rental property shall be $995.16 ($36,000, less $32,484.84 mortgage, less $2,520 (7% of $36,000.00)).

27. There is no marital debt to address: we adopt the reasoning of Master Frankel that there is no need to separately apportion marital debt, because all such debt has either been subsumed by a real estate mortgage, and

---

6. In our previous decision and decree, we erroneously calculated the net value of the rental property using the $47,000.00 value (which was the last appraisal) and did not use the $36,000.00 value testified to by the appraiser at the master's hearing of May 11, 2011. For consistency and because we believe it is more equitable, we will utilize the value of both parcels of real estate testified to at the May 11, 2011 proceeding.

therefore factored into the marital estate, or discharged in wife's bankruptcy.

28. Prior to separation, husband had accrued 15.97 years of service with the City of Reading Police Department.

29. Following separation, husband continued to work for an additional 3.3 years, making regular contributions into his pension.

30. There is no direct evidence demonstrating how much husband's City of Reading pension increased during the 3.3 years between separation and retirement due to his regular contributions.

31. Following separation, husband's pension increased in value not only due to additional contributions by husband but also due to interest and appreciation on the monies in his pension account.

32. There is no direct evidence demonstrating how much husband's City of Reading pension increased during the 3.3 years between separation and retirement due to interest and appreciation.

33. Following separation, husband purchased 4.75 years of service towards his City of Reading pension through an incentive program.

34. Husband retired on January 19, 2010 with a total of 24.065 years of service, and this is the number of years of service upon which husband's current monthly pension benefit is based.

35. On March 1, 2010 husband received a lump sum payment of $10,691.28 representing his pension benefits

from January 20, 2010 through March 2010.

36. Between April 2010 and March 2013, husband received 36 pension payments, valued at $161,208.

37. Wife's expert determined the present value of husband's City of Reading pension for purposes of equitable distribution to be $578,614.00 and husband's expert determined the present value for purposes of equitable distribution to be $1,095,408.16 (which did not account for the post-separation purchase of 4.75 years of service) or $878,048.45 (which did account for the 4.75 years purchased post-separation).

38. The parties stipulated[7] that the "monthly marital portion of the defendant's City of Reading pension benefit is $2,917 based on the average of the coverture fractions used by the parties' respective experts."

39. Master Shucker concluded that the monthly marital portion of husband's City of Reading Pension should be reduced by 13% to provide a Social Security offset, and neither party filed exceptions to that portion of the master's report.

40. Wife's expert determined that the value of wife's FERS pension for purposes of equitable distribution is $87,676 as of July 24, 2012.

---

7. Despite the wording of this stipulation, husband's attorney contends that she intended to agree that if the coverture fracture were applied to husband's pension, the result would be $2,917 and that she did not expressly agree that the marital portion of his pension was $2,917. Whether this was the stipulation entered into by the parties is immaterial as we have calculated the marital portion based on our own application of the coverture fraction to husband's actual monthly pension benefit from the City of Reading Police Department.

41. Wife's expert determined that the value of wife's TSP pension for purposes of equitable distribution is $76,281 as of December 11, 2011.

42. The parties stipulated, and the master concurred, that the monthly benefit accrued by wife in her FERS pension is $1,580 and that the marital portion of that benefit is $1,017 per month.

## Conclusions of Law

1. The trial court has broad discretion in fashioning an award of equitable distribution. *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009).

2. The policy of the divorce code is "to effectuate economic justice between the parties who are divorced." 23 Pa.C.S.A. §3201(a)(6).

3. For purposes of equitable distribution of marital property, the court may consider, among other things, the expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain. 23 Pa. C.S.A. §3502. (a)(10.2).

4. There is no bright line rule regarding the application of "cost of sale" expenses to real property in determining its value for purposes of equitable distribution. "Adjustment in the value of a residence for expenses associated with a contemplated sale may be an appropriate consideration in some equitable distribution cases. We neither forbid nor requires the practice." *Zeigler v. Zeigler.* 530 A.2d 445, 365 Pa. Super. 545 (1987).

5. "In determining the value of marital assets a court

must choose a date of valuation which best works economic justice between the parties." *Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006).

6. While the statute is silent as to the proper date of valuation, the law appears to favor a valuation date closest to the date of distribution. *Sutliff v. Sutliff*, 543 A.2d 534, 536, 518 Pa. 378, 382 (1988).

7. Where there is no evidence of "intentional consumption or waste" it is not error to value the marital residence closer to the date of the master's hearing than the date of separation. *Bold v. Bold*, 358 A.2d 741, 745, 358 Pa. Super. 7, 15 (1986).

8. "In determining the value of marital property the court is free to accept all, part, or none of the evidence as to the correct value of the property." *Baker v. Baker*, 861 A.2d 298, 302 (Pa. Super. 2004).

9. "Retirement pension benefits, vested and non-vested, are marital property subject to equitable distribution." *Brown v. Brown*, 669 A.2d 969, 972 (Pa. Super. 1995).

10. When valuing a pensions plan, if the court is using the date of separation (and contributions were not made to the pension prior to the marriage), then the use of the coverture fraction is unnecessary, as it would be 100% or 1.0. *Cornbleth v. Cornbleth*, 580 A.2d 369, 397 Pa. Super. 421 (1990).

11. "[T]he divorce code, 23 Pa.C.S.A. §3501(a), excludes property acquired after separation from consideration as marital property. If after-separation

property is not marital, it cannot be considered part of the marital estate." *Gordon v. Gordon*, 545 Pa. 391, 395-96, 681 A.2d 732, 734 (1996).

12. Property acquired after separation is excluded from the marital estate, and "this analysis applies equally to cases in which there is a deferred distribution of marital assets and in cases in which there is an immediate offset of marital assets. In no case may assets earned after separation be considered in calculating the value of a pension." *Gordon v. Gordon*, 545 Pa. 391, 396, 681 A.2d 732, 734 (1996).

13. "In the case of the marital portion of a defined benefit retirement plan being distributed by means of a deferred distribution, the defined benefit plan shall be allocated between its marital and nonmarital portions solely by use of a coverture fraction." 23 Pa. C.S.A. § 3501(c).

14. Where additional pension benefits are based on years of service, including years of service purchased by the employee spouse post-separation, the total number of years of service is considered in determining the marital portion. *See Meyer v. Meyer*, 749 A.2d 917, 561 Pa. 225 (2000).

15. "While increases due to interest or returns on investment in the value of the amount contributed during the marriage are marital property, contributions by the employee or employer after the date of separation are not marital property." *Schneeman v. Schneeman*, 615 A.2d 1369, 376 (Pa. Super. 1992).

16. "[A]n increase in value due to 'earnings' on the

corpus contributed during the marriage prior to separation" is marital. *Schneeman v. Schneeman*, 615 A.2d 1369, 376 (Pa. Super. 1992).

17. "When a plan has vested and its value increases aside from contributions parties made beyond the date of separation, the increase is marital." *Brown v. Brown*, 669 A.2d 969, 972 (Pa. Super. 1995).

18. "While the statute does not address, specifically, defined benefit plans involving regular and mandatory deductions from each paycheck, to the extent the same amount is deducted from each paycheck after separation as was deducted before these deducted amounts are included as marital property." *Smith v. Smith*, 595 Pa. 80, 102, 938 A.2d 246, 259 (2007).

19. Regular payroll deductions are "part and parcel of the continued employment of the worker" and are not excludable as post-separation monetary enhancements. *Smith v. Smith*, 595 Pa. 80, 102, 938 A.2d 246, 259 (2007).

20. Incentive plans (such as early retirement incentives) are not marital where they are not in place during the marriage, not contemplated by the parties during the marriage, and not occasioned by continued employment. *See Brown v. Brown*, 669 A.2d 969 (Pa. Super. 1995).

21. Post separation enhancements attributable to an additional monetary contribution over and above the regular payroll deductions are excluded from the marital estate. *Smith v. Smith*, 595 Pa. 80, 103, 938 A.2d 246, 260 (2007).

22. There is little appellate guidance on valuing a defined benefit plan where the employee spouse continues to work and there is no definitive retirement date established. *See DeMarco v. DeMarco*, 787 A.2d 1072 (Pa. Super. 2000).

23. A defined contribution plan is akin to a savings account, and thus the application of the coverture fraction may not be necessary to determine the marital portion. *Paulone v. Paulone*, 649 A.2d 691 (Pa. Super. 1994).

24. Where, due to the nature of employment a spouse does not participate in Social Security, it is appropriate to exclude from the marital estate the portion of that spouse's pension that represents amounts received in lieu of Social Security. *See Cornbleth v. Cornbleth*, 397 Pa. Super. 421, 580 A.2d 369 (1990) *appeal denied* 526 Pa. 648, 585 A.2d 468 (1991). (husband was a civil service employee and was not eligible to participate in the Social Security program); *See also* 5 U.S.C. 8349; *Schneeman v. Schneeman*, 615 A.2d 1369, 420 Pa. Super. 65 (1992); *Rimel v. Rimel*, 913 A.2d 289 (2006).

25. The Social Security offset is applicable regardless of any disparity in the parties' relative incomes. *Schneeman v. Schneeman*, 615 A.2d 1369, 376 (Pa. Super. 1992).

26. "Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services provided, and the property received in equitable distribution." *Teodorski v. Teodorski*, 857 A.2d 194, 201 (Pa. Super. 2004).

27. "[D]ividing the marital estate with mathematical

precision is not necessary" to effectuate economic justice between the parties." *Smith v. Smith*, 595 Pa. 80, 85, 102, 938 A.2d 246, 248, FN 4 (2007).

## Discussion

### The Parties' Pensions

Although the parties each filed multiple exceptions, the primary disputes involve their pensions. Specifically, they disagree on how to value husband's pension and on whether application of the coverture fraction to determine the marital portion is appropriate under the circumstances. Further, we have struggled with how to equitably offset wife's pension, which is not in pay status, against husband's pension, which is in pay status. These matters have been complicated by the amount of time that has passed between the date of the parties' separation in 2006 to the present, and the intervening changes in circumstances surrounding husband's pension.

Throughout the course of this litigation, the present value of husband's pension has been determined to be as little as $475,000 to as much as over one million dollars (by his own appraiser). In addition to be being the largest asset, it is also subject to several factors which may or may not have a compound effect on its value. At the time of the parties' separation in 2006, husband's pension benefit was valued at $2,033 per month. This amount was based on husband's commencement of employment with the City of Reading Police Department on September 26, 1990 and presumed termination of accrual of benefits date of September 17, 2006 (the date of separation). This

monthly benefit valuation took into account the fact that husband would be entitled to begin collecting benefits at the age of 44.52. For purposes of equitable distribution, the coverture fraction would have been 100%, or 1.0, as the entire pension up to the September 17, 2009 date of separation would have been earned during the marriage.

Following separation, husband continued to work and to contribute to this pension plan for an additional 3.3 years. In addition to the regular contributions in the form of payroll deductions, husband also took advantage of a retirement incentive program which allowed him to "purchase" 4.75 years of service for approximately $20,000.00. There is no contention that this $20,000.00 is a marital asset, and therefore, the increase in value of husband's pension directly resulting from this purchase should be excluded from the marital portion of his pension. Although husband's pension was valued in September, 2006 at $2,033 per month, by the time he retired 3.3 years later in January, 2010, his monthly pension benefit had grown to $4,478, which is the amount he receives today. Unfortunately, neither party was able to demonstrate to the court how much of the $2,445 per month increase is attributable to the additional monetary contributions made during the 3.3 years he worked, the natural increase in the value of his pension based on interest or appreciation, or the 4.75 years of service he purchased with non-marital funds.

In determining how to allocate husband's pension, we are guided by the divorce code:

In the case of the marital portion of a defined benefit

retirement plan being distributed by means of a deferred distribution, the defined benefit plan shall be allocated between it's marital and nonmarital portions solely by use of a coverture fraction. The denominator of the coverture faction shall be the number of months the employee spouse worked to earn the total benefit and the numerator shall be number of such months during which the parties were married and not finally separated. The benefit to which the coveture fraction is applied shall include all postseperation enhancements *except for enhancements arising from postseparation monetary contributions made by the employee spouse, including the gain or loss on such contributions.*

23 Pa. C.S.A. § 3501(c) (emphasis added). First we address whether the regular contributions to his pension plan by husband during the 3.3 years of postseparation service constitute "postseparation monetary contributions." To the extent that husband contributed a percentage of every paycheck after September 2006 through his retirement on January 19, 2010 he was making regular "monetary contributions" under the plain language of the statute. However, the Pennsylvania Supreme Court held, in applying this statute, that any such regular payroll contributions, provided the same amount is deducted after separation as before separation, are marital property subject to equitable distribution. *See Smith v. Smith*, 595 Pa. 80, 938 A.2d 246 (2007). The court characterized such contributions as "part and parcel of the continued employment of the worker" and specifically held that they are marital in nature and subject to equitable distribution. *Id.* at 102, 259. Therefore, any regular contributions to

husband's pension after separation, provided they were in the same amount as before separation, constitute marital property.

The second issue we address with respect to husband's pension is that the base salary upon which husband's current pension benefit is calculated was higher in 2010 when he retired than it was in 2006 when the parties separated. The Pennsylvania Supreme Court, also in *Smith*, determined that this disparity was adequately addressed by the application of the coverture fraction to the "final total value of the pension, even though the value has increase due to years of post-separation employment." *Smith* at 102, 259. This is in direct contravention of the previous rule expressed by the court in *Gordon*: that the salary upon which the present value of the pension should be calculated is the salary at the time of separation, and to that is applied the coverture fraction. *See Gordon v. Gordon*, 681 A.2d 732, 735 (Pa. Super. 1996)[8]. Therefore, the master was correct to apply the coverture fraction to the full amount of husband's current monthly benefit.

Having determined that any increase in value based on husband's 3.3 years of post-separation contributions is marital property, and that it is appropriate to base the value of husband's pension benefits for purposes of equitable distribution on his 2010 salary rather than his salary in

---

8. "The value of (husband's) pension, therefore, should have been calculated at the time of equitable distribution utilizing the salary earned at the date of separation, the date (husband) will be begin to receive pension benefits, and the appropriate mortality rates. This calculation will, in an immediate offset case, give us the present value of the pension" which must then be reduced by the coverture fraction. *Gordon* at 396, 735.

2006, we turn to the third post-separation factor affecting husband's pension: husband's purchase of 4.75 years of service through an incentive program with the City of Reading Police Department. Even based on the reasoning in *Smith*, the portion of husband's pension attributable to his purchase of 4.75 years of service is excluded from the marital estate, because it arose from a postseparation monetary contribution, over and above any regular deductions. Clearly, then, any portion of husband's current monthly pension benefit attributable to his purchase of 4.75 years of service with non-marital funds is non-marital property. Although it is not clear if the purchase had any exponential or compounding effect on the value of husband's pension, we have no information regarding this nor are we certain it would change the outcome given the Pennsylvania Supreme Court's reasoning in *Smith*. Therefore, we are constrained to simply exclude the 4.75 purchased years from husband's total years of service on which his pension is calculated. This means that 19% (.1919) of husband's currently monthly pension is excluded from the marital estate based on this purchase. This is achieved by the application of the coverture fraction to husband's current monthly pension benefit, because the number of years husband earned his pension during the marriage is divided by the total number of years of service, which includes the purchased years. Again, the master was correct in utilizing the coverture fraction to determine the marital share of husband's pension.

Unfortunately, after determining the value of husband's pension and the remainder of the marital estate, it is clear that the marital estate is insufficient to allow for

an immediate offset of assets. We must instead fashion a deferred offset distribution. This creates a serious inequity where husband's pension is in pay status, but wife's will not be for years to come. Therefore, we will either be reducing the amount husband must pay to wife based on money she is not yet receiving, or husband will be forced to pay the full amount without any offset, despite the fact that wife's pension has an established current value, more than 60% of which is marital property. Neither result seems equitable.

We have considered several ways to reach a fair resolution to the pension dilemma considering all of the factors. If we adopted Master Frankel's reasoning and reverted to the value of the parties' pensions as of the date of separation, this clearly would exclude any post-separation enhancements and allow the pensions to be compared as of the same time frame. In so doing, we would also deduct 13% from husband's pension and address wife's TSP. Unfortunately, this method of valuing and distributing the parties' pensions does not resolve the dilemma of how to equitably offset wife's pension against husband's. Moreover, we believe the Supreme Court's ruling in *Smith* precludes such a course of action.

Unlike Master Frankel, Master Shucker utilized the current values of the parties' pensions, applied the agreed-upon coverture fraction, and determined that the marital share of husband's pension was $2,917 per month. He then reduced that amount by a 13% social security offset, and determined that wife's share (50%) of husband's monthly pension payment was $1,289 per month, which husband

should pay wife until wife reaches 59 1/2, after which that amount is reduced to $759 per month, reflecting an offset of the marital portion of wife's pension against the marital portion of husband's pension. Again, under this scenario, husband is required to pay to wife 100% of wife's share of the marital portion of his pension for more than ten years before any of the current value of wife's pension is applied towards husband's monthly payments. This seems highly inequitable.

Husband currently receives $4,478 per month from his City of Reading Police pension. Neither party filed exceptions to the master's application of a thirteen-percent social security offset. Therefore, 13% of husband's monthly pensions payment is excluded from the marital estate as a social security offset. Based on the social security offset, $582.00 of husband's monthly benefit is excluded from the marital estate[9] ($4478-$582 = $3,896). To this number, we apply the coveture fraction to determine the marital share. The parties' experts each utilized slightly different coverture fractions, but the average of the two coverture fractions is .65135. This coveture fraction was obtained by dividing the number of years husband accrued pension benefits from the City of Reading from his date of employment through the date of the parties' separation (15.97 years) by the total number of years of service upon which husband's current monthly benefit is calculated (24.065 years).[10] This fraction accounts for the

---

9. The master first determined the marital portion and then applied the Social Security offset. The result is the virtually the same. ($4,478 x .6513=$2,917 x .13 =$379.21 $2,917-$379.21=2537.79)
   10. 15.97/24.065

4.75 years husband purchased, because it includes them in the calculation of the total number of years of service but excludes them from the marital estate.

The application of the coverture fraction to the portion of husband's monthly pension benefit that remains after subtracting the Social Security offset results in a marital portion of husband's monthly pension of $2,537.46[11]

If wife had not been employed during the marriage and had no pension, we would simply order husband to pay her whatever percentage of the marital portion of his pension we determine to be equitable, for example 50% or $1,269 per month. However, the parties agree that wife has a FERS pension[12] with a current monthly value of $1,580. She is also entitled to receive Social Security, so there is no offset to be applied to her pension. Application of the average of the two coverture fractions provided by the parties' experts to wife's FERS pension results in a marital value of wife's pension of $1,017 per month. If this were divided equally between the parties, wife would have to pay $508.50 per month to husband. In a 50/50 division, this would reduce husband's payment to wife to $659 per month.

Unfortunately, wife does not currently receive her pension benefits even though there is an established current value and wife's right to receive it has accrued. As

---

11. The parties stipulated that the application of the coverture fraction to the total monthly pension benefit results in $2917.00. The master then reduced that number by 13%, and the result was $2,535. We calculated as follows: $3,896 x .6513=$2,537.46.

12. We do not address wife's TSP in this section because it is a defined contribution pension and is distributed elsewhere.

a practical matter, we cannot credit wife the full amount of the present value of her FERS pension, because she is not yet receiving it. Nor can we equitably require husband to pay to wife 50% of the marital portion of his pension, without the benefit of any offset, where the parties' experts submit that 61 to 65%[13] of wife's pension benefits are marital property.

Accordingly, we feel it necessary to offset the marital portions of the parties' pensions, but to reduce the value of wife's monthly pension to reflect the fact that she is not yet receiving payments. For guidance in evaluating the value of a pension where the employee is still working, we turn to the Superior Court's reasoning in *DeMarco*. 787 A.2d 1072 (Pa. Super. 2000). We are cognizant that this case is not directly on point, but we have found little other guidance with respect to how to equitably distribute pensions between two parties where one pension is in pay status and the other is not. As the court in *DeMarco* observed, pensions "are a type of intangible property because they represent a contractual right to future benefits payable upon retirement." 787 A.2d at 1076. In this case, we are attempting to offset husband's tangible monthly pension payment against wife's less tangible right to a future monthly pension payment. In determining how to establish an offset amount, we consider that wife will not be eligible to receive her pension for at least 10 years. Notwithstanding the fact that wife will be unable to collect her pension for over a decade, her rights to her pension are fully vested and accrued. The pension appraisers were

---

13. The experts submitted coverture fractions of .6131 and .6475.

able to compute a present value, even considering all of the actuarial factors including the likelihood that wife may not ever collect her pension.

In the interest of fairness, we will attribute only 40% of the marital portion of the current value (as stipulated to by the parties) of wife's FERS pension to wife for purposes of calculating the amount to offset against the marital portion of husband's pension. Further, because 100% of the marital portion of wife's FERS pension will more than offset the marital portion of husband's pension when she retires, upon wife reaching the age of 59 1/2, husband's obligation to pay wife a portion of his pension shall terminate at that time. Therefore, we will order husband to pay wife $1,066[14] per month until wife reaches the age of 59 1/2.

## Real Estate

Wife filed exceptions regarding the dates of valuation of the parties' real estate, specifically the marital residence and the rental property. We feel both the divorce code and the relevant case law allow the court to utilize the valuations made closest to the date of distribution, which, in this case, would be the appraised value testified to by the appraiser at the 2011 master's hearing. We do not believe the transfer of title between the parties on an earlier date impacts this analysis, as title is not controlling in equitable distribution. Further, we believe it is permissible to reduce these appraised values by 7%, the standard cost of sale, even where there is no sale contemplated, as set forth

---

14. $1,269 — (($1,017 x .4)/2) = $1,065.60.

in 23 Pa.C.S.A. §3502(10.2). Therefore, we will deny all of wife's exceptions regarding the valuation of the marital real estate and we will grant husband's exception regarding the value of the rental property, as we previously inadvertently utilized a stale appraisal.

## 50/50 Division of the Marital Estate

Wife contends that the master erred in recommending a 50/50 division of property. In fashioning a distribution award, we consider the following factors: (1) The length of the marriage, (2) Any prior marriage of either party, (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, (4) The contribution by one party to the education, training or increased earning power of the other party, (5) The opportunity of each party for future acquisitions of capital assets and income, (6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits, (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker, (8) The value of the property set apart to each party, (9) The standard of living of the parties established during the marriage, (10) The economic circumstances of each party at the time the division of property is to become effective, (10.1) The federal, state and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain, (10.2) The expense of sale, transfer or liquidation associated with a particular asset,

which expense need not be immediate and certain, and (11) Whether the party will be serving as the custodian of any dependent minor children. 23 Pa.C.S.A. §3502(a).

This was a sixteen year marriage that resulted in two children. Both parties were employed for the duration of the marriage in their current professions; neither gave up their employment to stay home and care for children or family members. The parties are almost the same age, and both work for the government (he for the county and her for the federal government). They both have pensions: his is a greater amount than hers but she also is entitled to receive Social Security benefits. Both parties contributed to the maintenance and upkeep of the marital residence during the marriage, and both contributed to the comfortable standard of living enjoyed by the parties during the marriage. At the time of separation, husband undertook the responsibility of the parties' then-minor children, and did not seek child support from wife. Wife did not seek alimony from husband. The parties salaries are similar, although husband has a higher stream of income due to his receipt of his current salary and his pension benefits, but disparity is lessened by the fact that wife will receive a portion of husband's monthly pension payments.

Based on all of the foregoing, we believe a 50/50 division of assets is appropriate under the circumstances.

### Attorney's Fees

The determination to award counsel fees is within the discretion of the court. For all of the reasons set forth in the above discussion regarding the parties' relative financial

positions, we decline to award wife attorney's fees.

## Conclusion

In sum, we have endeavored to equitably divide the marital assets to effect economic justice between the parties under the particular facts and circumstances of this case, which have been complicated by the passage of time since the date of separation and changes in husband's employment and pension. We have considered that both parties were gainfully employed in their chosen careers for the duration of the marriage, and that each earns an adequate salary. We have considered that husband's pension nearly doubled in value since the date of separation while wife's remained nearly the same. After consideration of all the facts, we are constrained to abide by the dictates of the divorce code, which require the use of the coverture fraction as the sole means of determining the marital portion of the parties' pensions. Finally, we have attempted to formulate an equitable distribution scheme with respect to the parties' pensions where, though more than half of each party's pension is marital property, only husband's pension is in pay status. With all of these considerations mind, we enter the following order.

## ORDER

And now, this 22nd day of January, 2014, in consideration of the parties' exceptions and following argument thereon, and in consideration of the evidence presented at the master's hearings and the various stipulations entered into by the parties, we hereby order as follows:

Wife's exceptions 1 through 5, which all concern the

value of the parcels of real estate, are denied. We decline to asses the value of the marital residence at the time the parties transferred titled in November of 2006, and instead adopt the values for the marital residence and the rental property as testified to by the appraiser at the 2011 hearing before Master Frankel, which is the last hearing of record on the matter. We also DENY wife's exception 6, pertaining to the overall equitable distribution scheme. Under the facts and circumstances of this case, where both spouses have been gainfully employed throughout the marriage, we feel it is equitable to distribute the marital estate on an equal basis. Likewise, wife's exception with regard to counsel fees is denied. Wife's exceptions 8 and 9 are granted, to the extent that 23 Pa. C.S.A. §3501 (c) requires the application of the coverture fraction to the parties' pensions for purposes of determining the marital portion of the parties' pensions. We need not make any ruling on exceptions 10 and 11.

Husband's exception 1 is granted, to the extent that the master did not account for the current value of wife's pension. Husband's exception 2 is granted, as the court inadvertently failed to utilize the value testified to by the appraiser at the 2011 master's hearing. Husband's exception 3 is denied as we believe the law requires the application of the coveture fraction for purposes of determining the marital portion the parties' pensions. Husband's exception 4 is denied.

DECREE

And now this 22nd day of January 2014, in consideration of the report and recommendation of the master and

following argument on the parties' exceptions thereto, and following review of the briefs filed by counsel on behalf of the parties, review of the record including the transcript of the May 11, 2011 master's hearing before Master Frankel and the stipulation submitted to Master Shucker, it is hereby ordered and decreed as follows:

1. The divorce is granted under section 3301(d) of the Pennsylvania Divorce Code.

2. Each party shall retain possession of all household goods and furnishings currently in his or her possession.

3. Wife shall receive one-half of the parties' children's baby books and pictures.

4. The distribution of the marital assets and liabilities shall be 50/50.

5. Distribution of marital assets shall be as follows:

To Wife:

Wife's TSP $76,281.00

Proceeds from joint Pagoda Account     $565.00

Metropolitan Life Insurance Policy     $1,100.00

Wife's share of the marital portion of husband's monthly pension payments, received by husband to date, offset by 40% of half of the marital share of wife's pension. $51,145.00[15]

---

15. We calculated wife's portion of the monthly pensions benefits received by husband to date as follows:
On a monthly basis assuming 48 payments to date:

SUBTOTAL $129,091.00

Less from wife to equalize the distribution ($10,943.50)

TOTAL TO WIFE $118,147.50

To Husband:

Marital Residence $20,455.00

Rental Property $995.00

Ford Truck $8,310.00

Volvo $4,590.00

2006 Tax Refund $2,663.00

Stratos Boat $1,975.00

Caravelle Boat $4,305.00

Pagota Checking $3,000.00

Husband's share of the marital portion of husband's

---

$4,478-$582 (13% S.S .offset)= $3896
$3896 x .6513 = $2537
50% of $2537= $1269
$1229-$203.4**= $1065
$1065x 48= $51,148
On a lump sum basis assuming 48 payments to date:
$4478 x. 48 = $214,994
$214,994 — $27,949 (13% S.S .offset) $187,045
$187,045 x .6513+ $121,822
$121,822/2= $60,911
$60,911-$9,768 ($203.4**x48) $51, 143
AVERAGE: $51,145.50
** Wife's FERS has a present monthly value of $1,580, $1017 of which is marital. Husband would receive 50% (or $508.50) of this if it were presently in pay status. We are attributing 40% of that amount, or $203.40, as an offset to husband's obligation to wife.

monthly pension payments, received to date: $60,911.00

SUBTOTAL $107,204

Funds from wife to equalize the distribution $10,943.50

TOTAL TO HUSBAND $118,147.50

The above is premised upon husband's receipt of 48 City of Reading Pension payments to date.

Husband shall pay to wife $40,202 ($51,145.50 — $10,943.50) within 90 days of the date of this decree.

The funds currently in escrow shall be released to the parties' counsel, to be distributed in accordance with the above.

In addition to the above, wife shall receive $1,066 per month from husband's City of Reading pension each month until wife reaches the age of 59 1/2, after which point husband's obligation to make payments to wife shall terminate. If a Qualified Domestic Relation Order ("QDRO") is necessary to provide wife with her portion of husband's pension, wife's attorney shall prepare such order and husband's attorney shall facilitate its effectuation. Payment of wife's portion of husband's pension shall begin from the month following the date of this decree.

Both parties shall promptly execute any and all documents necessary to effectuate this decree.